LYDIA LIZARRÍBAR, demandante y recurrida, *v.* EDGARD MARTÍNEZ GELPÍ, demandado y peticionario.

*Número:* CE-87-658    *Resuelto:* 30 de junio de 1988

772

*Edgard Martínez Gelpí, pro se,* peticionario; *Juan M. Masini-Soler,* abogado de la recurrida.

EL JUEZ PRESIDENTE SEÑOR PONS NÚÑEZ emitió la opinión del Tribunal.

I

Los incidentes que originan la controversia ante nos se remontan al mes de marzo de 1986, cuando se traba entre las partes de epígrafe una disputa acerca de un alegado incumplimiento de pensión alimenticia para sus hijos por parte del peticionario, Sr. Edgard Martínez Gelpí.[1] En los procedimientos seguidos en el tribunal de instancia, el peticionario ha estado representado por el Lcdo. Tomás Céspedes y la demandante recurrida por el Lcdo. Juan M. Masini-Soler, quien es su cónyuge.

Sin embargo, mediante moción de 1ro de septiembre de 1987, el peticionario informó al tribunal que le había indicado a su abogado que no interesaba sus servicios en los asuntos relacionados con este caso y que en adelante habría de representarse por sí mismo.[2] El 8 de septiembre de 1987, el tribunal emitió la orden siguiente:

[1] Las partes en este caso se divorciaron el 13 de junio de 1975 en el Tribunal Superior, Sala de San Juan. Durante la unión matrimonial procrearon dos (2) hijos, de nombres Gretchen Camile y Edgard Rafael Martínez Lizarríbar, de veinte (20) y dieciséis (16) años de edad, respectivamente, en este momento.

[2] El señor Martínez Gelpí es abogado admitido al ejercicio de la profesión en Puerto Rico. Sin embargo, al presente reside permanentemente en el estado de Virginia, EE.UU.

2. NO HA LUGAR HASTA TANTO LA REPRESEN-
TACI[Ó]N DEL DEMANDADO SEA ASUMIDA POR
OTRO ABOGADO ADMITIDO EN PUERTO RICO. EL
TRIBUNAL NO AUTORIZA AL DEMANDADO A RE-
PRESENTARSE POR DERECHO PROPIO, AUN SIENDO
ABOGADO.

(FDO.) [Á]NGEL D. RAM[Í]REZ RAM[Í]REZ
JUEZ SUPERIOR

También fue declarada no ha lugar la solicitud de renun-
cia de repesentación presentada por el Lcdo. Tomás Cés-
pedes el 2 de septiembre de 1987, así como dos (2) reconside-
raciones solicitadas por este abogado en las fechas 16 de sep-
tiembre y 9 de noviembre de 1987.

De la negativa del tribunal a quo a autorizar al peticiona-
rio a representarse por sí mismo, acude éste ante nos y
aduce poseer un derecho de naturaleza constitucional a com-
parecer por derecho propio ante ese foro.

## II

En Estados Unidos se reconoció estatutariamente el de-
recho de las partes a representarse en los procesos judiciales
federales desde los albores de la creación de la nación ameri-
cana. *Section 35 of the Judiciary Act of 1789*, 1 Stat. 73, 92.
Este derecho permanece en la actualidad codificado en 28
U.S.C. sec. 1654.[3]

A pesar de ese reconocimiento estatutario, surgió en la
esfera federal, particularmente en los casos criminales, un
prolongado debate en cuanto a la posible dimensión constitu-
cional del derecho a representarse.[4] En *Adams v. U.S. ex*

---

[3] Esta sección dispone:
"In all courts of the United States the parties may plead and conduct their
own cases personally or by counsel as, by the rules of such courts, respectively,
are permitted to manage and conduct causes therein." 28 U.S.C. sec. 1654.

[4] También este debate estuvo presente en algunos estados para el mismo
tiempo que se discutía la cuestión a nivel federal. Véanse: *State v. Verna*, 498 P.2d
793 (Ore. 1972); *People v. Sharp*, 499 P.2d 489 (Cal. 1972).

*rel. McCann*, 317 U.S. 269 (1942), aunque el Tribunal Supremo de Estados Unidos correlaciona ese derecho con el de asistencia de abogado, prerrogativa de reconocida raigambre constitucional,[5] no expresa con claridad su naturaleza o rango constitucional. El Tribunal se expresó en los términos siguientes: "[t]he right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms". Íd., pág. 279. Una situación parecida se produjo en *Carter v. Illinois*, 329 U.S. 173, 174 (1946), donde el Tribunal vinculó este derecho con el debido proceso de ley, sin resolver de manera expresa su naturaleza constitucional.[6]

El primer pronunciamiento inequívoco acerca de su carácter constitucional en el ámbito federal se produjo en *United States v. Plattner*, 330 F.2d 271 (2do Cir. 1964). En dicho caso el Segundo Circuito determinó que el derecho a la autorrepresentación emana de la propia Constitución federal y no es un "mero producto de legislación o decisión judicial". (Traducción nuestra.) Íd., pág. 273. Sin embargo, esta interpretación no fue acogida por todos los tribunales de circuito. Algunos se negaron a conferirle rango constitucional al derecho en cuestión. En este grupo se encontraban el Tercer Circuito,[7] el Octavo Circuito[8] y el Distrito de Columbia.[9] Otros, como el Sexto Circuito,[10] el Séptimo Circuito[11] y el

---

[5] Emda. VI, Const. E.U., L.P.R.A., Tomo 1; *Powell v. Alabama*, 287 U.S. 45 (1932); *Gideon v. Wainwright*, 372 U.S. 335 (1963).

[6] Así se expresó el Tribunal en este caso: "Neither the historic conception of Due Process nor the vitality it derives from progressive standards of justice denies a person the right to defend himself or to confess guilt." *Carter v. Illinois*, 329 U.S. 173, 174 (1946).

[7] *United States ex rel. Soto v. United States*, 504 F.2d 1339 (3er Cir. 1974).

[8] *Butler v. United States*, 317 F.2d 249 (8vo Cir. 1963).

[9] *United States v. Dougherty*, 473 F.2d 1113 (D.C. Cir. 1972).

[10] *United States v. Sternman*, 415 F.2d 1165 (6to Cir. 1969).

[11] *Lowe v. United States*, 418 F.2d 100 (7mo Cir. 1969).

Noveno Circuito([12]) adoptaron la doctrina de *United States v. Plattner*, supra.

■ Finalmente, en *Faretta v. California*, 422 U.S. 806 (1974), el Tribunal Supremo federal reconoció por primera vez de manera categórica que el derecho de todo acusado a representarse por derecho propio en un procedimiento criminal encuentra apoyo en la Sexta Enmienda, Const. E.U., L.P.R.A., Tomo 1, así como en la jurisprudencia inglesa([13]) y colonial.

Intimó, además, el alto Foro que este derecho no sólo surge de la prerrogativa constitucional del acusado de renunciar a ser representado por un abogado, sino que es un derecho independiente que emana de la estructura e historia del texto de la Constitución norteamericana. Se reconoce, también, que se extiende a los estados a través de la Décimocuarta Enmienda, Const. E.U., L.P.R.A., Tomo 1, por ser parte del debido proceso de ley. *Faretta v. California*, supra, pág. 818.

---

([12]) *Arnold v. United States*, 414 F.2d 1056 (9no Cir. 1969).

([13]) En Inglaterra, a pesar de la exigencia que imperaba en la institución del *Star Chamber* (tribunal especializado en asuntos de tipo político), en el sentido de que los procesados en ese foro tenían que ser asistidos por abogados, una vez abolida la misma a causa de la revolución de 1641, prevaleció el reconocimiento del derecho a la autorepresentación. Aunque luego de estos acontecimientos se produjeron en Inglaterra otras injusticias, tales como el que los acusados de delitos graves o traición no tenían derecho a abogado, mediante legislación de 1695 y de 1836 el Parlamento inglés puso fin a las mismas y quedó configurado finalmente tanto el derecho a la representación por derecho propio, como el de ser representado por abogado. Véanse: A.R. Leventon, *Independent Right of Self Representation in Sixth Amendment permits Defendant to Act as Own Lawyer at the State Criminal Trials*, 61 Cornell L. Rev. 1019 (1976); *Faretta v. California*, 422 U.S. 806, 821–825 (1974).

Precisamente, la mayoría de los estados (treinta y seis (36) en total)(14) reconocen en sus respectivas constituciones el derecho a la autorrepresentación en casos criminales. No obstante, el mismo no se ha acogido como un derecho absoluto. Es apreciable el desarrollo de una vasta jurisprudencia estatal que ha puesto contornos y limitaciones precisas al mismo.

En esta dirección se puede observar una tendencia a rechazar la representación híbrida, esto es, representarse a sí mismo y también por abogado. Véanse: *Landers v. State*, 55 S.W. 272 (1977); *State v. Burgin*, 539 S.W.2d 652 (1976); *Abernethy v. Burns*, 173 S.E. 899 (1934). De igual manera se ha resuelto en varios estados que los tribunales no tienen obligación de informar al acusado de su derecho a la autorrepresentación, salvo que éste indague sobre el particular. Véanse: *People v. Salazar*, 141 Cal. Rptr. 753 (1977); *Russell v. State*, 383 N.E.2d 309 (1978); *Rather v. Commonwealth*, 574 S.W.2d 375 (1978); *State v. García*, 600 P.2d 1010 (Wash. 1979).

También se ha sostenido que este derecho tiene que ejercitarse voluntariamente, *Beckley v. State*, 333 So. 2d 875 (1976); *People v. Windham*, 560 P.2d 1187 (Cal. 1977); *Barnes v. State*, 528 S.W.2d 370 (1975); *Williams v. State*, 337 So. 2d 846 (1976); *Taylor v. Ricketts*, 238 S.E.2d 52 (1977),(15) inteligentemente y con pleno conocimiento de causa. Véanse: *People v. López*, 138 Cal. Rptr. 36 (1977); *State v. Fritz*, 585 P.2d 173 (Wash. 1978); *Else v. State*, 555

---

(14) Estos estados son: Arizona, Arkansas, Colorado, Connecticut, Delaware, Idaho, Illinois, Indiana, Kentucky, Montana, Missouri, Nevada, New Hampshire, New Mexico, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Utah, Vermont, Wisconsin, Louisiana, Kansas, Massachusetts, Nebraska, Washington, Alabama, Florida, Maine, Mississippi, South Carolina y Texas.

(15) En otros estados existe jurisprudencia similar, tales como: Illinois, Indiana, Kansas, Louisiana, Massachusetts, Michigan, Nebraska, New Hampshire, New York, Ohio, Oklahoma, Pennsylvania, Texas y Utah.

P.2d 1210 (Neb. 1976); *Reliford v. People*, 579 P.2d 1145 (Colo. 1978).(16)

Asimismo, numerosos casos sostienen que el acusado tiene que expresar de manera inequívoca su propósito o interés de representarse a sí mismo. Ello no debe deducirse de su comportamiento general en el proceso, como por ejemplo, el comparecer sin abogado a la vista. *People v. Windham*, supra; *Russell v. State*, supra; *State v. Marks*, 546 P.2d 807 (Ariz. 1977); *State v. Linsky*, 375 A.2d 813 (N.H. 1977).(17)

Se exige, igualmente, que el pedido sea hecho oportunamente. Esto es, al inicio o en las etapas tempranas del procedimiento. Entre más avanzado el proceso, mayor discreción del tribunal para denegar el pedido. *People v. Harris*, 140 Cal. Rptr. 697 (1977); *People v. Windham*, supra. En general véanse, además: *State v. Strickland*, 558 P.2d 723 (Ariz. 1976); *Thomas v. Superior Ct. In & For Cty. of Santa Clara*, 126 Cal. Rptr. 830 (1976); *Com. v. Miller*, 383 N.E.2d 1144 (1978).

Se ha dado, además, seria consideración a la indebida dilación de los procedimientos, así como a los trastornos, inconvenientes e interrupción de los mismos. *State v. Jones*, 546 P.2d 45 (Ariz. 1976); *People v. Tyner*, 143 Cal. Rptr. 52 (1977); *People v. Manson*, 139 Cal. Rptr. 275 (1977); *People v. Smith*, 398 N.E.2d 207 (1975). Este factor podría ser suficiente en casos apropiados para negar este derecho a quien lo solicite.

Adicionalmente, se ha decidido en varios estados que el acusado, aun cuando sea un lego, tiene el deber de cumplir esencialmente con las reglas procesales y con el derecho sustantivo más relevante al proceso, aunque no se requiera de

---

(16) En alrededor de otros treinta y dos (32) estados existe jurisprudencia similar.

(17) En por lo menos otros catorce (14) estados los tribunales se han pronunciado en esta misma dirección.

su parte un conocimiento técnico-jurídico preciso. *Smith v. State*, 368 N.E.2d 1154 (1977); *State v. Quinn*, 565 S.W.2d 665 (1978). Cabe agregar que varios casos también han dictaminado que el juez no tiene obligación de informar o ilustrar al acusado acerca de esas reglas o leyes. *Berry v. State*, 552 P.2d 87 (Okla. 1976); *State v. Palmer*, 580 P.2d 592 (Or. 1978). Tampoco tiene que instruirle sobre su derecho a la no autoincriminación. *People v. Cervantes*, 150 Cal. Rptr. 819 (1978). Asimismo, se ha establecido que no tiene el deber de nombrar un abogado *stand by* o asesor para un acusado que ha optado por ejercer este derecho. *Reliford v. People*, 579 P.2d 1145 (Colo. 1978); *State v. Burgin*, 539 S.W.2d 652 (1976). De igual manera, existe jurisprudencia en el sentido de que el tribunal no tiene que inquirir acerca de las razones por las cuales ha optado el acusado por la autorrepresentación. *People v. Wright*, 140 Cal. Rptr. 98 (1977); *People v. Sulamos*, supra; *State v. Sodorff*, 529 P.2d 1066 (Wash. 1975). No obstante, creemos que en casos apropiados, en atención a sus particulares circunstancias, podría convenir auscultar dichas razones para evitar posibles injusticias.[18] Finalmente, algunos estados han expresado que aun cuando el acusado haya optado por representarse a sí mismo, podría renunciar a este derecho y solicitar ser asistido por abogado. Sin embargo, ello habrá de estar sujeto a la sana discreción del juez, el cual decidirá conforme a los mejores intereses del acusado y de la administración de la justicia. *People v. Elliot*, 139 Cal. Rptr. 205 (1977); *Commonwealth v. Jackson*, 383 N.E.2d 835 (1978).

Algunos tribunales en la jurisdicción federal se han hecho eco de muchos de los criterios y señalamientos antes ex-

---

[18] Considérense, por ejemplo, situaciones en casos criminales en los que opta por la autorrepresentación por razones de indigencia. No siempre las entidades que ofrecen servicios legales gratuitos pueden asumir la representación de los que solicitan sus servicios. Otros podrían desconocer estos programas.

puestos al ponderar el alcance de este derecho en esa jurisdicción. Véanse: *O'Reilly v. New York Times Co.*, 692 F.2d 863 (2do Cir. 1982); *Sapienza v. Vincent*, 534 F.2d 1007 (2do Cir. 1976); *United States v. Denno*, 348 F.2d 12 (2do Cir. 1965).

Existe, por otra parte, en las jurisdicciones estatales discrepancia en cuanto a si el denegar a un acusado el derecho a representarse por sí mismo acarrea necesariamente la revocación de la sentencia o si, por el contrario, ésta sólo procede si se demuestra grave perjuicio. Véanse: *e.g. People v. Freeman*, 142 Cal. Rptr. 806 (1977), y *People v. Tyner*, supra, donde se favorece la primera postura. *En State v. Kirby*, 254 N.W.2d 424 (1977), se aboga por la segunda. Nos parece más razonable esta última corriente doctrinal.

También existen algunas discrepancias en lo relativo al alcance de este derecho en procesos apelativos. En casos como *In re Walker*, 128 Cal. Rptr. 291 (1976); *Owen v. State*, 381 N.E.2d 1235 (1978); *Callahan v. State*, 354 A.2d 191 (Md. 1976), y *Gilday v. Commonwealth*, 369 N.E.2d 716 (1977), se tiende a no conferirle rango constitucional al mismo a este nivel bajo la Sexta Enmienda, *supra*, particularmente en lo que respecta a las comparecencias orales.

Otros tribunales, en cambio, se inclinan a reconocer que la naturaleza constitucional de este derecho se extiende a la fase apelativa, aunque de manera más limitada que en los procedimientos en primera instancia. *People v. Stephens*, 246 N.W.2d 429 (1976); *Webb v. State*, 533 S.W.2d 780 (1976). Esta discrepancia está aún latente y se alimenta del hecho de que este punto no fue resuelto claramente por el Tribunal Supremo federal en *Faretta v. California*, supra. Ello permite a los distintos estados interpretar esta cuestión en ambas direcciones. Ahora bien, tanto los favorecedores de la constitucionalidad de este derecho en esta etapa, como sus detractores coinciden, sin embargo, en que la discreción del tribunal apelativo es más amplia que la de los tribunales de

instancia en lo concerniente a este asunto, independientemente de que se conciba como derecho constitucional, estatutario o tradicional. Véanse: *e.g., Webb v. State*, supra; *Owen v. State*, supra.

Para una discusión más abarcadora sobre este tópico, véanse: J.S. Herbrand, *Accused's Right to Represent Himself in State Criminal Proceeding—Modern State Cases*, 98 A.L.R.3d 13; D.R. Agthe, *Existence and Extent of Right of Litigant in Civil Case, or of Criminal Defendant, to Represent Himself before State Appellate Courts*, 24 A.L.R.4th 430; Comentarios, *Self-Representation in Criminal Trials: The Dilemma of the Pro Se Defendant*, 59 (Núm. 6) Calif. L. Rev. 1479 (1971); A.R. Leventon, *Independent Right of Self Representation in Sixth Amendment Permits Defendant to Act as Own Lawyer at State Criminal Trials*, 61 Cornell L. Rev. 1019 (1976).

En lo que respecta a este derecho en el ámbito civil la jurisprudencia, tanto estatal como federal, es sumamente escasa. Sin embargo, las doctrinas elaboradas en los casos criminales antes mencionados son esencialmente compatibles y, por ende, aplicables a los casos civiles. Lo mismo parece opinar el Segundo Circuito en *O'Reilly v. New York Times Co.*, supra, pág. 867 [2, 3], cuando al hacer referencia a una de las limitaciones del derecho a la autorrepresentación en casos criminales enfatiza que la misma es igualmente aplicable a los casos civiles. En este mismo caso sólo se distingue este derecho en los asuntos civiles de los criminales en lo relativo a su naturaleza. Expresa que en lo civil emana de un estatuto (*Sec. 35 of the Judiciary Act of 1789*, supra), mientras que en los procesos criminales surge de la Constitución. Esto naturalmente se refiere a la esfera federal. En *State ex rel. Reed v. Schwab*, 600 P.2d 387, 389 (Or. 1979), el Tribunal Supremo de Oregón destaca esta diferencia, aunque con matices distintos, amparándose en que la Sexta Enmienda, *supra*, sólo

es de aplicación a los procedimientos criminales y no a los civiles.

No obstante la naturaleza estatutaria de este derecho en asuntos civiles, en *O'Reilly v. New York Times Co.*, supra, pág. 867, el tribunal del Segundo Circuito, al referirse al mismo, manifestó que "is a right of high standing, not simply a practice to be honored or dishonored by a court depending on its assessment of the desiderata of a particular case".

Independientemente de su fuente de autoridad, el derecho en cuestión en el ámbito civil ha estado profundamente arraigado a las instituciones judiciales de la sociedad norteamericana a través del tiempo. Parece haber sido heredado del *common law* inglés, el cual exhibe características similares. Véanse, por ejemplo: *Shuttleworth v. Nicholson*, 174 Eng. Reprint 87 (1833); *Mascati v. Lawson*, 173 Eng. Reprint 14 (1835). Ese arraigo histórico es apreciable en casos como *Talbot v. Talbot's Representatives*, 25 Ky. 3 (1829), y *New Hanover County v. Sidbury*, 36 S.E.2d 242 (1945); así parece ser en el presente. Véase *In re Marriage of Lemen*, 170 Cal. Rptr. 642 (1980).

■ Por último, es preciso señalar, por su pertinencia al caso de autos, que el hecho de que el litigante que reclama este derecho sea abogado no ha significado en todos los casos examinados una ruta expedita para el reconocimiento de esta prerrogativa en los tribunales. Consideraciones como, por ejemplo, el haber comparecido al caso representado por otro abogado han inducido a algunos tribunales a negarle el derecho a "asociarse" con su representante en su propia defensa. Véanse: *McClamrock v. Colonial Ice Co.*, 6 S.E.2d 850 (1940); *Carter v. Holt*, 154 P. 37 (1915).[19] El hecho de ser

---

[19] Es menester, sin embargo, reconocer que en casos como *Conray v. Waters*, 65 P. 387 (1901), y *Scott v. Times Mirror Co.*, 184 P. 672 (1919), se ha autorizado a un litigante que al mismo tiempo era abogado a unirse a su abogado en su

abogado no puede constituir por sí solo criterio suficiente para autorizar representación por derecho propio a una parte. Otros factores, como los previamente comentados, podrían aconsejar que el mejor curso de acción a seguir es requerir la comparecencia de otro abogado en el caso.

Para una discusión más amplia sobre el tema comentado, véase, Anotación, *Right of Litigant in Civil Action Either to Assistance of Counsel Where Appearing Pro Se or to Assist Counsel Where Represented*, 67 A.L.R.2d 1102.

## III

En lo que concierne a Puerto Rico, no existe jurisprudencia que señale claramente el curso de acción a seguir en estos casos. Sin embargo, distintas consideraciones nos conducen a reconocer en esta jurisdicción un derecho con iguales matices a los reconocidos en otras jurisdicciones.

■ En primer término, la Sec. 7 de la Ley Núm. 17 de 10 de junio de 1939 (4 L.P.R.A. sec. 740) dispone:

> Ninguna persona que no sea abogado autorizado por la Corte Suprema de Puerto Rico podrá dedicarse al ejercicio de la profesión de abogado, ni anunciarse como tal, ni como agente judicial, ni gestionar, *con excepción de sus asuntos propios*, ningún asunto judicial o cuasijudicial ante cualquier tribunal judicial. . . . (Énfasis suplido.)

En esta disposición subyace un reconocimiento estatutario indirecto de este derecho en la frase "con excepción de sus asuntos propios". De ella podemos colegir de manera afirmativa y directa que toda persona que no sea abogado autorizado por el Tribunal Supremo de Puerto Rico podrá gestionar sus propios asuntos en cualquier tribunal de justicia del país.

---

defensa en determinados instantes en el proceso (por ejemplo, interrogatorio a un testigo).

■ Aparte de este enfoque estatutario, otras consideraciones nos permiten llegar a la misma conclusión tanto en el ámbito civil como criminal. Es doctrina firmemente sostenida por este Tribunal que los derechos, incluso los constitucionales, son renunciables. En estos últimos casos hemos enfatizado que tal acción tiene que hacerse voluntaria, inteligente, expresamente (no de manera presunta) y con pleno conocimiento de causa. *Morales Narváez v. Gobernador*, 112 D.P.R. 761 (1982); *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720 (1978); *Pueblo v. Arcelay Galán*, 102 D.P.R. 409 (1975). El derecho a estar asistido de abogado no es excepción. También éste es renunciable. En *Pueblo v. Gordon*, 113 D.P.R. 106, 108 (1982), expresamos: "[t]an fundamental se considera el derecho de un acusado a estar bien asistido de abogado, que la violación de ese derecho *a falta de renuncia*, sin más, conlleva la revocación de la sentencia condenatoria." (Énfasis suplido.) La aprobación que nuestro ordenamiento jurídico confiere al derecho a renunciar a la asistencia de abogado, como se desprende expresamente del citado caso, implica por otro lado el reconocimiento del derecho a la autorrepresentación. De otra manera sería absurdo que se le permitiera renunciar a abogado y se le negara al mismo tiempo la oportunidad de defenderse por derecho propio.

■ Por otra parte, en vista de que el Tribunal Supremo federal ha conferido rango constitucional a este derecho en lo criminal, a la luz de la Sexta Enmienda, *supra*, ello hace del mismo necesariamente aplicable a Puerto Rico, toda vez que en cuanto a derechos fundamentales en nuestra jurisdicción no podemos conceder menos derechos a los ciudadanos que los reconocidos bajo la Constitución de Estados Unidos. *López Vives v. Policía de P.R.*, 118 D.P.R. 219 (1987); *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 205 (1984); *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250 (1978).

En lo que concierne al ámbito civil, toda vez que en esta esfera no se reconoce el derecho a asistencia de abogado a los litigantes, resulta más apremiante aún el derecho a la representación por sí mismo en tales casos. Además, si en los procesos criminales se le ha reconocido este derecho al acusado, donde el interés afectado es de incuestionable valor y preeminencia, con mayor razón en lo civil, *que por lo general* los intereses afectados no gozan de la misma jerarquía o no revisten de ordinario la misma importancia.

Ahora bien, este derecho, bien en lo civil o en lo criminal, según pudimos observar en otras jurisdicciones, no es absoluto e ilimitado. Distintas consideraciones podrían inducir correctamente a un magistrado a negar a las partes o a un acusado en determinados casos la oportunidad de representarse por derecho propio en los procedimientos judiciales. A esos fines acogemos los criterios establecidos en la jurisprudencia estatal y federal antes examinada, con miras a orientar nuestra discreción en la consideración de este asunto. A la luz de esto exponemos que: (a) la representación, como regla general, no puede ser híbrida, esto es, no debe estar representado por abogado y a la misma vez representarse por derecho propio; (b) la decisión tiene que haber sido tomada voluntariamente, de manera inteligente y con pleno *conocimiento de causa*; (c) tiene que hacerse mediante solicitud expresa (inequívoca) al tribunal; (d) debe ser formulada oportunamente, pues mientras más adelantado el proceso, mayor la discreción del juez para denegarla; (e) se tomará, además, en consideración la demora o interrupción de los procedimientos y su efecto sobre la adecuada administración de la justicia; (f) deberá atender asimismo el tribunal al factor de la calidad de la representación que la parte habrá de ser capaz de procurarse, así como la complejidad de la controversia a adjudicarse; (g) la parte o el acusado tendrá el deber de cumplir esencialmente con las reglas procesales y

el derecho sustantivo aplicable, aunque no se requerirá un conocimiento técnico de los mismos; (h) no está obligado el magistrado a ilustrar a quien opte por tal derecho acerca de esas leyes o reglas; (i) el magistrado tampoco viene obligado a nombrarle abogados asesores durante el proceso; (j) el magistrado no tiene el deber de inquirir respecto a las razones por las cuales ha elegido la representación por derecho propio, aunque en los casos que estime conveniente podría así hacerlo, y (k) finalmente, el magistrado tampoco tiene la obligación de informar al acusado o a las partes de su derecho a la autorrepresentación. Por último, y en armonía con la norma establecida en los casos de *Pueblo v. Santaella*, 91 D.P.R. 350 (1964), y *B. Muñoz, Inc. v. Prod. Puertorriqueña*, 109 D.P.R. 825 (1980), solamente las personas naturales pueden acudir a los tribunales en defensa de sus derechos bajo las circunstancias expuestas en esta opinión. Cada una de estas consideraciones deberán ser justamente balanceadas por el tribunal, atendiendo las circunstancias particulares del caso, los intereses de las partes y la eficiencia en la administración de la justicia.

Una indebida denegación de este derecho no acarreará la revocación automática de la sentencia. Ello procederá en aquellos casos en los que se demuestre grave perjuicio.

En el caso que nos ocupa consideramos que el balance más racional de los factores enumerados indica que debe reconocerse al licenciado Martínez Gelpí su derecho a representarse a sí mismo en los procesos que se siguen en su contra. De los criterios expuestos, solamente el relativo a la demora o interrupción de los procedimientos parece contraindicar tal determinación. Esto principalmente debido a que el peticionario reside permanentemente en el estado de Virginia, lo cual según el tribunal a quo, ha creado ya algunos

contratiempos y atrasos en el trámite del caso. Aunque este factor es de gran importancia, el tribunal no debe olvidar que cuando la dilación se deba a incomparecencias o al incumplimiento de órdenes o resoluciones, tiene a su disposición los remedios de la Regla 45.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III (sentencia en rebeldía), o los de la Regla 39.2 (32 L.P.R.A. Ap. III), sobre desestimación, y las sanciones provistas en la Regla 42.2 (32 L.P.R.A. Ap. III), entre otras. En vista de esto, y dado que el señor Martínez Gelpí es un abogado admitido a la práctica en esta jurisdicción, nos inclinamos a reconocer su derecho a comparecer por derecho propio en el pleito que se considera en el tribunal a quo.

Por último, las circunstancias irregulares que han caracterizado el trámite de este caso ante nos ameritan unos comentarios adicionales.

▉ Procede en primer término consignar nuestra más honda preocupación por el proceder de ambas partes en este caso, particularmente del peticionario, licenciado Martínez Gelpí. Éstas se han olvidado de su deber de contender profesional y dignamente sus diferencias y conflictos en el foro judicial, y han convertido el caso en una disputa personalista, de ataques y contraataques sobre cuestiones ajenas a la controversia legal y tendentes a desacreditar y mancillar sus propias reputaciones.

Este caso, como muchos otros de igual naturaleza, más que un litigio legal se ha convertido en un penoso drama de antagonismo personal motivado por rencores y resentimientos, alimentados por una relación postdivorcio de hostilidad y confrontación donde los únicos perdedores son los hijos que se pretenden defender. Normalmente en estos casos se utiliza consciente o inconscientemente a los hijos como insignias de la contienda o como instrumentos para llevar a cabo propósitos de venganza; logran con ello destruir sueños, herir sentimientos y hasta deformar personalidades,

a veces incipientes y en formación, de niños que sólo desean o hubieran deseado vivir en armonía con ambos padres, y amar y ser amados por éstos.

Ejemplo de lo anterior son los siguientes escritos que constan en autos.

(1) *Réplica a oposición* – presentado por el demandado peticionario en la fecha de 11 de noviembre de 1987.

(2) *Moción Informativa* – presentada por la demandante recurrida el 30 de diciembre de 1987.

(3) *Respuesta a Moción Informativa* – presentada por el demandado peticionario el 25 de enero de 1988.

En vista de esta situación, se apercibe al peticionario y al abogado de la recurrida que en el futuro deberán ceñirse estrictamente a los principios expuestos en los Cánones 8, 29 y 30 de Ética Profesional, 4 L.P.R.A. Ap. IX, de suerte que mantengan el debido decoro en el trámite de este caso en protección de la dignidad del tribunal y los mejores intereses de los hijos de las partes. De continuar las partes exhibiendo por sí o por conducto de sus representantes el tipo de comportamiento que les ha caracterizado, el tribunal de instancia, en atención a los criterios antes aludidos, tomará las medidas que fueren pertinentes para que las partes sean representadas por otros abogados que puedan dar cabal cumplimiento a las disposiciones de los Cánones de Ética Profesional.

A tenor con lo aquí expuesto, *se expide el auto de certiorari y se revoca la resolución del Tribunal Superior, Sala de San Juan. En consecuencia, se autoriza la renuncia del Lcdo. Tomás Céspedes, la comparecencia del demandado peticionario por derecho propio, y se le advierte y se le apercibe al peticionario y al representante legal de la recurrida sobre el más estricto cumplimiento con las disposiciones de los Cánones 8, 29 y 30 de Ética Profesional.*

El Juez Asociado Señor Rebollo López emitió opinión disidente. El Juez Asociado Señor Ortiz no intervino. El Juez Asociado Señor Hernández Denton se inhibió.

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Aun cuando, *en términos generales,* no tenemos reparo a la norma general que el Tribunal establece en la decisión que emite en el presente caso respecto al derecho de nuestros conciudadanos a autorrepresentarse en los procedimientos judiciales ante nuestros tribunales —en vista de la jurisprudencia sobre el tema del Tribunal Supremo de Estados Unidos, realmente no hay otra alternativa— disentimos enérgicamente del resultado a que llega el Tribunal en el mismo. Somos del criterio que el presente caso es el mejor ejemplo de una situación en que no se le debe permitir a una parte representarse a sí misma. Confirmaríamos, en su consecuencia, la resolución de fecha 6 de septiembre de 1987 emitida por el Tribunal Superior de Puerto Rico, Sala de San Juan, mediante la cual dicho foro le denegó autorización al peticionario Edgard Martínez Gelpí a "representarse por derecho propio" y le ordenó a éste contratar, y anunciar, nueva representación legal en el incidente sobre pensión alimenticia atrasada actualmente pendiente ante dicho tribunal.

Adicionalmente decretaríamos —amparándonos en el poder inherente que tienen los tribunales de justicia para dirigir los procedimientos que ante los mismos se ventilan, y dados los hechos particulares del presente caso— el retiro como abogado de la parte demandante recurrida del actual esposo de dicha parte, concediéndole término a ésta para contratar y anunciar nueva representación legal. Consideramos que la situación intolerable actualmente imperante en

dicho caso —que el propio Tribunal en la opinión mayoritaria que emite cataloga como "penoso drama de antagonismo personal . . . donde los únicos perdedores son los hijos que se pretenden defender" (opinión del Tribunal, pág. 787)— es de la responsabilidad tanto del Lic. Edgard Martínez Gelpí como del actual esposo y abogado de la demandante recurrida, el Lic. Juan M. Masini Soler.

## I

Como reconoce indirectamente el Tribunal en la opinión mayoritaria, todo procedimiento postdivorcio —unos en grado mayor que otros— está matizado de rencores, tensiones y otros sentimientos humanos nocivos a la relación normal que debe existir entre los seres humanos, los cuales sentimientos obstaculizan la labor decisional de nuestros jueces de instancia, labor que de por sí resulta ser una difícil y delicada. Si a ello le añadimos el ingrediente de permitírsele a una de las partes envueltas en un procedimiento postdivorcio, abogado de profesión, el que se autorrepresente en el mismo y se consiente a que el abogado de la otra parte sea el actual cónyuge de ésta, la situación se convierte en una inmanejable e imposible.

Mal puede exigírsele a nuestros jueces de instancia que mantengan su ecuanimidad, calma, paciencia, objetividad e imparcialidad "obligándolos" a enfrentarse a una situación donde los "abogados" de las partes han perdido totalmente la perspectiva y que, en palabras de la propia opinión mayoritaria, olvidándose "de su deber de contender profesional y dignamente sus diferencias y conflictos en el foro judicial . . . *han convertido el caso en una disputa personalista,* de ataques y contraataques sobre cuestiones ajenas a la controversia legal *y tendentes a desacreditar y mancillar sus propias reputaciones*". (Énfasis suplido.) Opinión del Tribunal, pág. 787.

En atención a lo anteriormente expuesto, no creemos que se le hace un favor ni a los hijos envueltos en la presente controversia, los cuales resultan ser las víctimas inocentes de ella, ni a la imagen y a la calidad de la justicia que impera y se dispensa en nuestro país, permitirles a estos dos miembros del foro que continúen adelante en este desgraciado y "penoso drama de antagonismo personal . . .". Opinión del Tribunal, pág. 787. Si acaso, y en adición a erradicarlos como abogados de este caso en particular, deberíamos de tomar los pasos necesarios para que los mismos respondan, en la esfera disciplinaria, por la conducta observada.(1)

---

(1) Establecen los Cánones de Ética Profesional —como Criterio general— que:

"La preservación del honor y la dignidad de la profesión y la buena relación entre compañeros es responsabilidad ineludible de todo miembro de la profesión legal y para ello todo abogado debe observar con sus compañeros una actitud respetuosa, sincera, honrada y de cordialidad y cooperación profesional, velando siempre por el buen ejercicio de la profesión legal." *Deberes del abogado en relación con sus compañeros y su profesión, Criterio general, Cánones de Ética Profesional,* 4 L.P.R.A. Ap. IX, pág. 606.