*678 TEXTO COMPLETO DE LA SENTENCIA
Comparece la Sra. Zaida Delgado Hernández (la peticionaria) por derecho propio, in forma pauperis [1] y mediante Recurso de Revisión Especial, (Regla 67 del Reglamento del Tribunal de Apelaciones) [2] nos solicita la revisión de una determinación emitida el 23 de junio de 2009 por el Centro Estatal para Protección a Menores de la Administración de Familias y Niños (Centro Estatal). Mediante esta carta, la Administradora del Centro Estatal le informó a la recurrente que luego de examinar el expediente de investigación con número de caso R08-07-37081, no procedía la eliminación de su nombre del Registro Central de Casos de Protección (Registro Central), según dispone el Artículo 25 de la Ley 177 de 1 de agosto de 2003, Ley para el Bienestar y la Protección Integral de la Niñez, 8 L.P.R.A. sees. 444 et seq. (Ley Núm. 177), porque el referido de protección se encontró con fundamento.
Por los fundamentos que exponemos a continuación, este Foro desestima —por falta de jurisdicción— este recurso de Revisión Administrativa.
I
Luego de analizar el confuso expediente que tenemos ante nuestra consideración, notamos que la carta de 23 de junio de 2009 no se puede considerar una “orden o resolución final” de conformidad con la Ley de Procedimiento Administrativo Uniforme (LPAU), Ley Núm. 170 del 12 de agosto de 1988, según enmendada. Aunque la LPAU no ofrece una definición de “orden o resolución final” de conformidad con la jurisprudencia interpretativa, podemos considerar que una comunicación de una agencia es una “orden o resolución final” si dispone del caso ante la agencia y tiene efectos adjudicativos y dispositivos sobre las partes. Se trata pues, de la resolución que culmina en forma final el procedimiento administrativo respecto a todas las controversias. Depto. Educ. v. Sindicato Puertorriqueño, 168 D.P.R. 527, 545 (2006). En el caso de autos, la aludida carta de junio de 2009 no es una adjudicación final, ni orden. Se trata de una carta en la que se informa el estatus del expediente ante la Agencia. La peticionaria intenta revisar mediante este recurso una determinación final y firme del Departamento de la Familia, sobre la cual no solicitó revisión en los términos dispuestos por la Ley Núm. 177 y su Reglamento.
La peticionaria alega que el Centro Estatal insiste en no eliminar su nombre del Registro Central y la obliga a tomar talleres en el Instituto del Hogar. Alega que como “ganó” la custodia de sus tres hijos menores el 27 de mayo de 2009, ya se adjudicó el hecho que ella no maltrata a sus hijos, que su ex marido la acusa de ser paciente mental, que su abogado no la defendió adecuadamente en el caso de divorcio, que este es un caso de infidelidad mal llevado, que la Trabajadora Social no ha querido acatar las órdenes del Tribunal y eliminar su nombre del Registro Central.
El 19 de agosto de 2008, la Administración de Familias y Niños del Departamento de la Familia le informó a la peticionaria que el referido de protección R08-07-37081 del caso del Programa de Emergencias Sociales de San Juan fue investigado y el mismo resultó con fundamento. En este documento de Notificación de Acción Tomada se le apercibió a la peticionaria de sus derechos según el Artículo 25 de la Ley Núm. 177, 8 L.P.R.A. sec. 446d.
La peticionaria solicitó por escrito el 9 de junio de 2009 a la Sra. Lisa M. Agosto Carrasquillo, Directora del Centro Estatal, y por conducto de la Administradora, Sra. Mayra N. López Carrero, que se eliminara su nombre del Registro Central. Además solicitó acceso a la información que obraba en el expediente administrativo del referido de protección R08-07-37081. [3]
El 23 de junio de 2003, la Sra. López Carrero le informó que no procedía eliminar su nombre del Registro *679 Central porque el Programa de Emergencias Sociales realizó una investigación cuyo resultado halló con fundamento el referido.
El 6 de agosto de 2009,, la Junta Adjudicativa del Departamento de Familia le informó a la peticionaria:
“Recientemente recibimos unos documentos a su nombre relacionados al caso R08-07-7081, [...] Luego de evaluar los documentos enviados por usted, hemos llegado a la conclusión de que los mismos no constituyen una apelación ante esta Junta.”
n
A
El Artículo 4 de la Ley Núm. 177, 8 L.P.R.A. sec. 444a, establece que el Departamento de la Familia (DF) tiene la responsabilidad de investigar y atender las situaciones de maltrato, maltrato institucional, negligencia o negligencia institucional. Con este propósito, la Ley Núm. 177 faculta al DF a adoptar los procedimientos, reglas y reglamentos necesarios para poner en vigor la política pública enunciada en la Ley.
Por otro lado, el Artículo 7 de la Ley Núm. 177, 8 L.P.R.A. sec. 444d, crea el Registro Central, y dispone que éste consistirá de un sistema de información integrado acerca de toda situación de maltrato, maltrato institucional, negligencia y negligencia institucional. El Registro Central se organizará para permitir identificar los referidos previos, casos anteriores de protección, conocer el status de éstos y analizar periódicamente los datos estadísticos y otra información que permita evaluar la efectividad de los programas de servicios a la niñez.
En virtud de este mandato legislativo, el DF aprobó el Reglamento para la Implantación de la Ley para el Bienestar y la Protección Integral de la Niñez, Reglamento Núm. 6918. Sobre el Registro Central, el Artículo 7.2 . del Reglamento Núm. 6918 establece lo siguiente:
“Se establecerá un Registro Central, que consistirá de un sistema mecanizado de información integrada acerca de toda situación de maltrato, maltrato institucional, negligencia o negligencia institucional. Este Registro Central estará organizado para permitir identificar los referidos previos, casos anteriores de protección, conocer el status de éstos y analizar periódicamente los datos estadísticos y otra información que permita evaluar la efectividad de los programas de servicios.
Los siguientes datos de cada caso se encuentran en el Registro Central según recogido en los formularios:
a. Referidos de maltrato, maltrato institucional, negligencia o negligencia institucional cursados por el Departamento.
b. Informe de investigación de cada referido.
c. Informe de cierre de cada caso.
d. Solicitudes de copia, enmienda o eliminación de la información que consta en el Registro.
e. Acción tomada sobre las solicitudes de copia, enmienda o eliminación de la información que consta en el Registro.
El Registro Central mantendrá un archivo de casos que conservará datos que permitan dejar constancia de los referidos atendidos por el Departamento, sean los mismos con o sin fundamento.
*680 El Registro Central será responsable de analizar los datos recopilados a través de las investigaciones y someter informes estadísticos sobre las tendencias relacionadas con los casos de maltrato a menores. Además, emitirá las certificaciones de antecedentes de maltrato que soliciten los ciudadanos.”
En cuanto a los derechos de las personas cuya conducta es investigada bajo la Ley Núm. 177, el Artículo 10 del Reglamento Núm. 6918 establece lo siguiente:
“Artículo 10: Derechos del Sujeto del Informe
10.1 En General
Toda persona que sea sujeto de un informe hecho para referir una situación de maltrato, maltrato institucional, negligencia o negligencia institucional tiene derecho a solicitar copia de la información que se encuentra en el Registro Central referente a su caso. La misma se hará por escrito e irá dirigida al Secretario del Departamento de la Familia o a la persona que éste designa para tal función.
Las solicitudes hechas serán aprobadas siempre y cuando no vayan en contra del mejor bienestar e interés del menor y asegurándose de que se toman las medidas necesarias para proteger la confidencialidad de aquellos informantes que de buena fe cooperaron en el transcurso de la investigación.
10.2 Informes con Fundamentos
El derecho de la persona que sea sujeto de un informe para referir una situación de maltrato, maltrato institucional, negligencia o negligencia institucional, que haya sido encontrado con fundamento, a solicitar copia de la información que se encuentra en el Registro Central referente a su caso, no conllevará la eliminación de esta información de manera que el Departamento pueda identificar los referidos previos, casos anteriores de protección, conocer el status de éstos y analizar periódicamente los datos estadísticos y otra información que permita evaluar la efectividad de los programas de servicios.
10.3 Informe sin Fundamento
El sujeto de un informe encontrado sin fundamento podrá solicitar que el mismo sea enmendado o que se elimine su nombre del Registro Central. La solicitud se hará por escrito dentro de treinta (30) días contados a partir de notificado que no existe fundamento.
En los casos en que la solicitud sea denegada por el Centro Estatal de Protección a Menores o cuando éste no actúe dentro de treinta (30) días contados a partir de recibida la solicitud, el sujeto del informe podrá acudir al Tribunal del Circuito de Apelaciones en un término no mayor de treinta (30) días a partir de la notificación de denegación de la solicitud o de transcurrido el tiempo del Centro Estatal para actuar sobre ella.
El Reglamento Núm. 6918 también establece un proceso de apelación en el cual la persona afectada puede solicitar una vista administrativa.
Artículo 13: Vista Administrativa
13.1 En General
Una parte adversamente afectada que entienda que se ha violentado algún procedimiento de los establecidos para la atención de las situaciones de maltrato de menores tendrá derecho a presentar una querella, solicitud o petición sobre dicha actuación a la Administradora de Familias y Niños.
*681 Además, una parte adversamente afectada o que entienda que una determinación que se ha tomado por la agencia no es conforme a tales normas o procedimientos tendrá derecho a solicitar una apelación ante un Oficial Examinador de conformidad con este reglamento, según la Ley de Procedimiento Administrativo Uniforme, Ley 170 de 12 de agosto de 1988, según enmendada.
13.2 Iniciación del procedimiento
El procedimiento adjudicativo ante el Departamento se iniciará con la presentación de una querella, solicitud; petición o apelación dirigida al Oficial Examinador designado en el cual expondrá en forma específica y concisa los hechos que dan margen a solicitud.
A. Contenido de la Querella, Solicitud, Petición o Apelación
La querella, solicitud, petición o apelación deberá incluir la siguiente información:
(1) Nombre y dirección postal de todas las partes.
(2) Hechos constitutivos del reclamo o situación que genera la querella, solicitud, petición o apelación.
(3) Referencia a las disposiciones legales o reglamentarias aplicables de conocerlas.
(4) Remedio que solicita.
(5) Copia de la notificación o documento que haya dado lugar a la controversia y del sobre con el matasello del correo en el cual se le envió la misma.
(6) Firma de la persona promovente del procedimiento.
B. Radicación de la Querella, Solicitud, Petición o Apelación
La querella, solicitud, petición o apelación deberá presentarse en la Administración de Familias y Niños (Nivel Central) personalmente o mediante correo regular.
C. Términos para la Querella, Solicitud, Petición o Apelación
Una parte adversamente afectada que entienda que se ha violentado alguna norma o procedimiento de los establecidos para la atención de las situaciones de maltrato a menores, o entienda que la determinación que se ha tomado por la agencia no es conforme a tales normas o procedimientos tendrá quince (15) di as para presentar su querella, solicitud, petición o apelación ante el Oficial Examinador, a partir del conocimiento de los hechos o de la notificación de la decisión, según sea el caso.” [Destacado por nosotros]
B
La sección 4.2 de la Ley de Procedimiento Administrativo Uniforme (LPAU), Ley Núm. 170 del 12 de agosto de 1988, 3 L.P.R.A. see. 2172, dispone, en lo pertinente, que:
“Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia...podrá presentar un recurso de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha de archivo en autos de la copia de la notificación de la orden o resolución final de la agencia....”. [Destacado por nosotros].
*682 La Regla 57 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. XXII-B, R. 57, dispone que:
“El escrito inicial de revisión deberá ser presentado dentro del término jurisdiccional de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final del organismo o agencia.” [Destacado por nosotros].
Por otro lado, la Regla 83 del Reglamento del Tribunal de Apelaciones’4 L.P.R.A. Ap. XXII-B, R. 83(C), dispone que este Foro puede, motu proprio, desestimar un recurso por cualquiera de las razones expuestas en la Regla 83(B) de dicho Reglamento, entre éstas, que este Tribunal carece de jurisdicción.
El Tribunal Supremo de Puerto Rico (TSPR) ha reiterado que los tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen. Lugo v. Suárez, 165 D.P.R. 729 (2005). En consecuencia, “[l]as cuestiones de jurisdicción, por ser privilegiadas, deben ser resueltas con preferencia. [Si se carece] de jurisdicción, lo único que puede hacer un tribunal es así declararlo y desestimar el caso.” Freire v. Vista Rent, res. el 9 de noviembre de 2006, 169 D.P.R._(2006), 2006 J.T.S. 172. Una apelación o un recurso prematuro al igual que uno tardío, sencillamente adolece del grave e insubsanable defecto de falta de jurisdicción. Pueblo v. Santana Rodríguez, 148 D.P.R. 400 (1999).
En Szendrey v. F. Castillo, res. el 16 de enero de 2007, 169 D.P.R._(2007), 2007 J.T.S. 12, el TSPR reiteró que la falta de jurisdicción de un tribunal no es susceptible de ser subsanada y añadió que le corresponde a los foros adjudicativos examinar su jurisdicción, ya que ésto incide de manera directa sobre el poder mismo para adjudicar la controversia. Una vez un tribunal determina que no tiene jurisdicción sobre el asunto planteado, procede la inmediata desestimación del recurso apelativo conforme ordenan las leyes y reglamentos para el perfeccionamiento de estos recursos.
m
Como cuestión de umbral, el TSPR ha dispuesto que la función investigativa de las agencias administrativas en una investigación es válida si está dentro de los poderes del organismo público que la lleva a cabo, si sus términos no son demasiado vagos e imprecisos, y si la información que se busca es pertinente a las funciones o deberes de la agencia. No es necesario que la investigación sea precedida por una querella formal, una demanda o una acusación criminal, lo que resulta evidente, ya que el propósito de la investigación es, precisamente, averiguar si existe evidencia de que se ha violado la ley, y de su resultado depende si la agencia presenta o no una querella, demanda o acusación contra la persona que haya incurrido en tal conducta. Comisionado de Seguros v. Bradley, 98 D.P.R. 21 (1969).
En el caso de autos, la investigación del DF estuvo dentro de los poderes conferidos por la Ley Núm. 177. El DF le notificó a la peticionaria el 19 de agosto de 2008 que luego de realizar una investigación, el referido de protección había sido declarado con fundamento y le advirtió de su derecho a obtener la información que obra en el expediente y recurrir de la determinación. El término para solicitar información comenzó a decursar el 19 de agosto de 2008 y expiró treinta (30) días después, mientras el término para solicitar una vista administrativa expiró quince (15) días después, ambos mucho antes de la presentación de este recurso el 14 de julio de 2009. En consecuencia, carecemos de jurisdicción para revisar la determinación de la Administración de Familias y Niños del DF, porque el recurso de Revisión Administrativa es tardío.
Contrario a las alegaciones de la peticionaria, el Informe de la trabajadora social de 3 de marzo de 2009 y que fue discutido ante el TPI durante la vista celebrada el 27 de mayo de 2009, recomienda que: “La custodia de los menores la mantenga la señora con la intervención del Departamento de la Familia”. Igualmente, el TPI ordenó a la peticionaria a continuar con la ayuda terapéutica y a recibir ayuda en el DF, Oficina Local de Guaynabo. Según consta en la minuta, la peticionaria se rehúsa a recibir ayuda del DF e insiste en que no quiere asistir a las citas en la oficina de Guaynabo. El TPI exhortó a la peticionaria a asistir a la cita con la trabajadora *683 social. El 2 de junio de 2009, la peticionaria acudió a la referida cita en el DF y le dijo a la trabajadora social, Antonia M. Nieves Martínez, que no interesa ni necesita servicio alguno de la Agencia e insistió en que el caso debía cerrarse. El TPI concedió la custodia a la peticionaria con la intervención del DF. No obstante, la peticionaria interpreta erróneamente esta determinación judicial y entiende que el DF no acata las órdenes del TPI, porque no ha cerrado el caso ante la Agencia. No le asiste la razón. Hasta que el TPI no disponga otra cosa, ésta deberá cumplir con todas las condiciones que le impuso el tribunal.
Es preocupante la actitud de la peticionaria que insiste en representarse por derecho propio y confundir los procedimientos administrativos con los procedimientos judiciales. [4] Esto a pesar de que el TPI la ha instruido desde el año 2008 para que procure representación legal y que su ex esposo consignó $5,000 en el tribunal para los gastos del litigio. Debemos destacar que el derecho de auto-representación de la peticionaria no es absoluto y que el recurso ante nos es sumamente impreciso y confuso. [5] El derecho a la auto-representación, en el contexto de un pleito civil, es de naturaleza estatutaria. Lizarríbar v. Martínez Gelpí, 121 D.P.R. 770 (1988). El TSPR estableció los criterios que un juzgador debe evaluar al momento de determinar si permite o no la representación legal por derecho propio, a saber:
“(1) que la representación, como regla general, no puede ser híbrida, esto es, el acusado no debe estar representado por abogado y, a la vez, representarse por derecho propio;
(2) que la decisión tiene que haber sido tomada voluntariamente, inteligente y con pleno conocimiento de causa;
(3) que tiene que hacerse mediante una solicitud expresa e inequívoca al tribunal;
(4) que debe ser formulada oportunamente;
(5) que, además, se tomará en consideración la demora o interrupción de los procedimientos y su efecto sobre la adecuada administración de la justicia;
(6) que se deberá atender el factor de la calidad de la representación que la parte habrá de procurarse, así como la complejidad de la controversia que se adjudicará;
(7) que el acusado tendrá el deber de cumplir esencialmente con las reglas procesales y el derecho aplicables, aunque no se le requerirá un conocimiento técnico de éstos;
(8) que el magistrado no está obligado a ilustrar al acusado acerca de esas leyes o reglas;
(9) que el magistrado tampoco está obligado a nombrarle abogados asesores durante el proceso;
(10) que el magistrado no tiene el deber de inquirir respecto a las razones por las cuales el acusado ha elegido la representación por derecho propio, aunque en los casos que estime convenientes podría hacerlo;
(11) que el magistrado tampoco tiene la obligación de informar al acusado de su derecho a la auto-representación.”
Lizarríbar v. Martínez Gelpí, supra, a las págs. 785 y 786, Véase también Pueblo v. Cruzado, 161 D.P.R. 840, 846-847 (2004).
El 29 de mayo de 2009, el TPI refirió el caso al Juez Coordinador para que le asigne un abogado a la peticionaria. Concurrimos con su apreciación de que la peticionaria necesita adecuada representación legal y que su insistencia en representarse por derecho propio no sirve los mejores intereses de la justicia. Además para no *684 incurrir en abuso de los procedimientos debe acatar las órdenes del TPI.
IV
Por los fundamentos discutidos, este Tribunal desestima el presente recurso por falta de jurisdicción.
Ordenamos a la Secretaria del Tribunal de Apelaciones enviar copia de esta Sentencia al Hon. Juez José R. Parés Martínez, Sala de Familia y Menores, Tribunal de Primera Instancia, Región Judicial de Bayamón. [Caso Civil Núm. D DI2006-4001(3006)].
Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 11

. La peticionaria solicitó el 10 de agosto de 2009 que le permitiéramos litigar como indigente. Este Tribunal declara con lugar su petición.

. El Recurso de Revisión Especial provee para la Revisión Administrativa de las decisiones relacionadas con la Tarjeta de Salud, Tarjeta del PAN, solicitud de vivienda en residenciales públicos, vivienda subsidiada, beneficios de desempleo y otros beneficios de ayuda social similares. Por tanto, no es de aplicación en el caso de epígrafe.

. Según se desprende del expediente, antes de esta fecha la peticionaria había solicitado al DF información sobre el aludido referido de protección, porque consta en el expediente una carta de 13 de abril de 2009 del Director Interino de la Oficina de Asuntos Legales de Familia y Niños, Benjamín Rivalta López, que atiende el requerimiento de información de la peticionaria. De esta determinación, la peticionaria pudo haber recurrido en un término de 30 días que venció el 13 de mayo de 2009.

. Así, por ejemplo, la peticionaria incluye en su recurso alegaciones y documentos acerca de la querella que presentó ante el Tribunal Supremo en contra de su representante legal en el caso de divorcio. Además aneja copias inconexas de textos publicados en revistas o periódicos que no tienen relación alguna con el presente recurso.

. Tomamos conocimiento judicial de la Resolución de 11 de julio de 2008 del caso Núm. KLCE-2008-00966 en la que este Tribunal exhortó a la peticionaria a buscar representación legal y destacó que: “Los escritos de la peticionaria son sumamente confusos”. En este recurso, la peticionaria pretendía revisar la sentencia de divorcio porque no está conforme con la causal. Su recurso fue presentado fuera del término jurisdiccional para las apelaciones. Según surge de la minuta de 27 de mayo de 2009, la peticionaria solicitó al TPI que enmendara la causal de divorcio. Nuevamente, se le informó que la sentencia era final y firme.