EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br>Gilberto Salas Arana | 2013 TSPR 51<br><br>188 DPR ____ |

Número del Caso: CP-2010-7


Fecha: 9 de abril de 2013


Materia: Conducta Profesional – Se ordena el archivo de la querella.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

| In re:<br><br>Gilberto Salas Arana | Núm.: **CP-2010-007** | Sobre:<br><br>Conducta Profesional |
|---|---|---|

***PER CURIAM***

En San Juan, Puerto Rico, a 9 de abril de 2013.

Mediante Querella presentada se le imputaron al Lcdo. Gilberto Salas Arana (licenciado Salas o el querellado) varias violaciones al Código de Ética Profesional. A pesar de que concluimos que no se probó por medio de evidencia clara, robusta y convincente que el querellado incurriera en la conducta antiética atribuida, destacamos el riesgo al que se expone un abogado cuando defiende los intereses de un pariente en un procedimiento judicial marcado por la animosidad de alguna de las partes en el caso.

**I**

El licenciado Salas fue admitido al ejercicio de la abogacía el 28 de diciembre de 1983. A base de la queja presentada en su contra por el Sr. Alan Medina Forastieri

(señor Medina o el querellante) y conforme a nuestras directrices, el 15 de junio de 2010 la Oficina de la Procuradora General sometió una Querella en contra del licenciado Salas mediante la cual se le atribuyó la violación de los Cánones 15, 17 y 35 del Código de Ética Profesional (Código de Ética), 4 L.P.R.A. Ap. IX, Cs. 15, 17 y 35 (2012).

En lo pertinente a las imputaciones que pesan en contra del licenciado Salas, el Canon 15 del Código de Ética provee que un abogado "[n]o debe actuar inspirado por la animosidad ni por los prejuicios de su cliente ni debe permitir que éste dirija el caso ni que se convierta en el dueño de la conciencia del abogado". Establece, además, que "[s]erá impropio utilizar los procedimientos legales en forma irrazonable o con el fin de hostigar la parte contraria."

Por su parte, el Canon 17 del Código de Ética prohíbe a un abogado representar a un cliente en un caso civil cuando estuviere convencido de que lo que se pretende es "molestar o perjudicar a la parte contraria" o hacerla "víctima de opresión o daño". Dispone, igualmente, que la comparecencia de un abogado ante el tribunal equivale "a una afirmación sobre su honor de que en su opinión el caso de su cliente es uno digno de la sanción judicial…."

Por último, el Canon 35 del Código de Ética le exige al abogado sinceridad y honestidad. Entre sus

disposiciones, el mencionado precepto establece que "[n]o es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho…." Igualmente requiere al abogado "ajustarse a la sinceridad de los hechos… al presentar causas…."

Como fundamento para tales imputaciones se aduce primeramente que el querellado promovió solicitudes de órdenes de protección inmeritorias a favor de su prima y cliente, la Sra. Lorna Núñez Arana (señora Núñez), en contra del querellante, señor Medina. Igualmente se alega que, a pesar de tener conocimiento personal de que la señora Núñez había convivido con el señor Medina por espacio de diecinueve (19) meses luego de su divorcio en marzo de 2006, el licenciado Salas presentó una moción de desacato contra éste reclamando el pago de alimentos por el periodo de tiempo de convivencia antes mencionado.

El 9 de marzo de 2011 designamos al Hon. German Brau Ramírez como Comisionado Especial en este caso. Luego de la celebración de una vista evidenciaria el 25 de octubre de 2011, el Comisionado Especial rindió su Informe.

Como parte de sus hallazgos, el Comisionado Especial concluyó que no quedó probado que el querellado violase los Cánones 15 y 17 del Código de Ética según expuestos en la Querella. No obstante, en lo que respecta al Canon 35

del Código de Ética entendió que, a base de la evidencia presentada, las circunstancias ameritaban una amonestación al letrado.

En lo atinente al Canon 15 del Código de Ética, dispuso el Comisionado Especial que la moción de desacato presentada por el licenciado Salas estaba razonablemente justificada, porque el señor Medina no había pagado la pensión fijada por el tribunal. En lo que respecta a las solicitudes de órdenes de protección, halló que las mismas respondieron a la animosidad existente entre las partes y perseguían evitar incidentes mayores de violencia. Asimismo concluyó que, conforme a la evidencia que tuvo ante sí, no estaba en posición de concluir que el querellado hubiese actuado movido por pasión o que sus decisiones estuviesen motivadas por el ánimo de perjudicar al señor Medina. A base de los fundamentos antes expuestos, determinó igualmente que el querellado no infringió el Canon 17 del Código de Ética que prohíbe a un abogado participar en un procedimiento dirigido a molestar o perjudicar a la parte contraria.

No obstante, estimó que el querellado violó el Canon 35 del Código de Ética al negar la convivencia entre el señor Medina y su ex esposa y no clarificar que el querellante pernoctaba con frecuencia en casa de ésta.

Tanto el licenciado Salas, a través de su representante legal, como el querellante, *pro se*,

reaccionaron al Informe del Comisionado Especial. El querellado argumentó que, conforme a la prueba desfilada, quedó claro que no contravino su deber ético de sinceridad y honestidad, ya que existía duda razonable respecto a la alegada convivencia. El señor Medina, por su parte, argumentó que la evidencia sustentaba todas las violaciones imputadas en la Querella.

Coincidimos con la posición del Comisionado Especial en lo que respecta al archivo de los cargos asentados en los Cánones 15 y 17 del Código de Ética. No obstante, su recomendación de amonestar al querellado por alegadamente violar el Canon 35 del Código de Ética amerita mayor discusión. Acorde con lo anterior, procedemos a resumir las determinaciones de hecho sometidas por el Comisionado Especial en su Informe y que encontramos relevantes al deber de sinceridad y honestidad consignados en el Canon 35 del Código de Ética.

## II

El señor Medina y la señora Núñez estuvieron casados hasta marzo de 2006 cuando su matrimonio terminó por divorcio. Estando casados procrearon una hija la cual, a la fecha de los hechos aquí planteados, era menor de edad. Como resultado del divorcio, el Tribunal de Primera Instancia fijó una pensión de cuatrocientos dólares

($400.00) mensuales, pagadera por el señor Medina a través de la Administración para el Sustento de Menores (ASUME).

Entre los meses de mayo de 2006 y noviembre de 2007 el señor Medina y la señora Núñez experimentaron cierto grado de reconciliación. Sin embargo, según indica el Comisionado Especial, los detalles de la reconciliación no quedaron del todo claros. Inicialmente el señor Medina pernoctaba de forma irregular en la casa de la señora Núñez en Hatillo, pero luego se quedó de forma más frecuente durante varios meses. Igualmente, indicó el Comisionado Especial que, aunque el señor Medina alegó que aportaba a algunos gastos de la familia, su testimonio a esos efectos tampoco quedó claro, ya que no pudo precisar la fuente de sus ingresos para esa época. Lo que sí resultó incontrovertido durante el proceso investigativo es que durante esas fechas el señor Medina no pagó la pensión alimentaria impuesta por el tribunal.

Para ese entonces el licenciado Salas también vivía en Hatillo a sólo siete (7) casas de distancia de la residencia de su prima. Dada esta cercanía y su parentesco con la señora Núñez, el querellado conocía que el señor Medina pernoctaba frecuentemente en la casa de su ex esposa.

En noviembre de 2007 el señor Medina y la señora Núñez se separaron nuevamente y ambos promovieron varias

solicitudes de órdenes de protección el uno contra el otro.

El 4 de enero de 2008, a petición de la señora Núñez, el querellado, conjuntamente con el licenciado Antonio Androver Robles, solicitaron al Tribunal de Primera Instancia que hallara al señor Medina incurso en desacato por el incumplimiento con su obligación alimentaria.[1]

El querellante se opuso a dicha solicitud y levantó como defensa el que no debía pensión por haber estado conviviendo con su ex esposa desde mayo de 2006 hasta noviembre de 2007.

## III

El Canon 35 del Código de Ética fija el deber de sinceridad y honradez exigido a cada abogado frente a todos y ante todo tipo de acto. *In re Ojeda Martínez*, 185 D.P.R. 1068 (2012); *In re Vázquez Pardo*, 185 D.P.R. 1031 (2012); *In re Peña, Santiago*, 185 D.P.R. 764 (2012).

Conforme a lo anterior, "el abogado que provee al tribunal información falsa o que no se ajuste a la verdad, o que oculte información que deba ser revelada, incumple con este canon". *In re Valentín Custodio*, 2012 T.S.P.R. 186, 187 D.P.R. ___ (2012) (citando *In re Nieves Nieves*, 181 D.P.R. 25, 41 (2011)).

---

[1] El Sr. Alan Medina Forastieri también presentó una queja designada AB-2008-236 contra el Lcdo. Antonio Androver Robles, la cual fue archivada por este Tribunal el 22 de mayo de 2009.

El mero hecho de faltar a la verdad contraviene el Canon 35 del Código de Ética, independientemente de que no medie mala fe, no se actúe deliberadamente con intención de engañar, ni se cause daño a un tercero. In re Ojeda Martínez, *supra*; In re Vázquez Pardo, *supra*; In re Peña, Santiago, *supra*. Estas circunstancias se tornan relevantes al momento de determinar la sanción disciplinaria que corresponde imponerle al abogado incurso en una violación ética. In re Iglesias García, 183 D.P.R. 572 (2011).

**IV**

El procedimiento establecido para atender querellas disciplinarias contempla la designación de un Comisionado Especial, quien tendrá a su cargo celebrar una vista, recibir prueba y rendir un informe con sus determinaciones de hechos para nuestra consideración. Regla 14(h) del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-B, R. 14(h) (2012). Según hemos reconocido consistentemente, en el descargo de su encomienda el Comisionado Especial ejerce una función similar a la del juzgador de instancia. Por ende, se encuentra en una posición aventajada para aquilatar la prueba testifical y adjudicar credibilidad, por lo que sus determinaciones fácticas merecen nuestra mayor deferencia. In re Cuevas Borrero, 185 D.P.R. 189 (2012); In re Muñoz, Morell, 182 D.P.R. 738 (2011); In re

Plaud González, 181 D.P.R. 874 (2011); In re Guzmán Guzmán, 181 D.P.R. 495 (2011).

A pesar de que no venimos obligados a aceptar su informe y estamos libres de adoptarlo, modificarlo e inclusive rechazarlo, dado su contacto directo con el testimonio presentado, de ordinario sostendremos las determinaciones fácticas del Comisionado Especial, salvo que se demuestre prejuicio, parcialidad o error manifiesto. In re Cotto Luna, 2013 T.S.P.R. 8, 187 D.P.R. ___ (2013); In re Cuevas Borrero, *supra*; In re Muñoz, Morell, *supra*; In re Guzmán Guzmán, *supra*.

Habida cuenta de que el procedimiento disciplinario contra un abogado puede resultar en la pérdida de su título, viéndose afectado de este modo su derecho fundamental a ganarse su sustento, la carga probatoria exigida resulta más onerosa que aquella impuesta a los procedimientos civiles ordinarios. In re Soto Charraire, 2012 T.S.P.R. 153, 186 D.P.R. ___ (2012); In re Martínez Almodóvar, 180 D.P.R. 805 (2011); In re Irizarry Vega, 176 D.P.R. 241 (2009). Así pues, según pautado inicialmente en In re Caratini Alvarado, 153 D.P.R. 575, 585 (2001), hemos resuelto que el *quantum* evidenciario requerido para imponer sanciones disciplinarias contra un abogado es uno de prueba clara, robusta y convincente, no afectado por reglas de exclusión ni a base de conjeturas. In re Soto Charraire, *supra*; In re Muñoz, Morell, *supra*; In re

Martínez Almodóvar, *supra*; In re Pérez Riveiro, 180 D.P.R. 193 (2010); In re Irizarry Vega, *supra*.

No obstante, el esquema probatorio no se equipara con el asignado a casos criminales. "[E]l estándar de la prueba clara, robusta y convincente es más alto y sólido que el de la preponderancia de la prueba, pero menos exigente y riguroso que el de prueba más allá de la duda razonable…." In re Martínez Almodóvar, *supra*, pág. 820 (citas omitidas). "Aun cuando no se puede definir de manera precisa, la prueba clara, robusta y convincente ha sido descrita como aquella evidencia que produce en un juzgador de hechos una convicción duradera de [que las] contenciones fácticas son altamente probables." In re Irizarry Vega, *supra*, pág. 246; In re Ruiz Rivera, 168 D.P.R. 246, 253 (2006).

**V**

Según el Informe del Comisionado Especial, el licenciado Salas tenía justificación válida para refutar la defensa de convivencia interpuesta por el señor Medina dado que los detalles de la relación entre la pareja, así como los pormenores atinentes a las aportaciones del querellante a beneficio de su hija durante el periodo en cuestión, resultaron ambiguos. Dicho esto, el Comisionado Especial halló que el querellado fue descuidado al formular sus alegaciones al negar tal convivencia y no

clarificar que el señor Medina pernoctaba con frecuencia en casa de su prima y cliente.  A base de ello, concluyó que el licenciado Salas contravino las disposiciones del Canon 35 del Código de Ética.  Advirtió, sin embargo, que a su juicio la conducta del abogado no fue intencional ni motivada por el propósito de inducir a error al tribunal, por lo que recomendó que la sanción se limitara a una amonestación al letrado.

El Comisionado Especial tuvo el beneficio de escuchar a las partes concernidas durante la vista evidenciaria y de este modo evaluar la credibilidad que le mereció el testimonio de cada una de ellas.  Cónsono con lo anterior, determinó que al licenciado Salas le constaba de propio y personal conocimiento que el querellante frecuentemente se quedaba en casa de su ex esposa.  No podemos perder de perspectiva que los sucesos relevantes a esta Querella tienen lugar en Hatillo, un pueblo pequeño, y que el querellado residía en la vivienda de su madre a escasamente unas siete (7) casas de distancia de la residencia de su prima.  De igual manera, quedó establecido que el señor Medina acostumbraba almorzar con cierta regularidad en la casa donde habitaba el licenciado Salas.  Sin embargo, existe evidencia en los autos de que tanto el licenciado Salas como su cliente informaron al foro de instancia sobre este particular.  A esos efectos,

la Minuta correspondiente a la vista celebrada el 18 de junio de 2008 ante ese foro señala lo siguiente:

El licenciado Salas informa:

....

Que se niegan las alegaciones de que el [querellante] convivió con la [señora Núñez]. El [querellante] **sólo pernoctó en el hogar** sin contribuir con los gastos.

(Énfasis nuestro).

De igual manera, en la respuesta número 10 de la Contestación a Pliego de Interrogatorio cursado en el caso de alimentos, por conducto del licenciado Salas, la señora Núñez indicó: "[s]e niega la convivencia, iba de visita y **pernoctaba de vez en cuando**, pero nunca vivimos como marido y mujer...." (Énfasis nuestro). En la respuesta número 13 del mismo documento, aunque se negó igualmente la convivencia, se clarificó que **"sólo se hospedó"**. (Énfasis nuestro).

En la Contestación a Querella (queja) presentada el 17 de noviembre de 2008 el licenciado Salas manifestó que cuando el señor Medina venía a Hatillo a relacionarse con su hija, su ex esposa le permitía dormir en un cuarto adicional en la vivienda, pero que éstos nunca convivieron como marido y mujer. Acompañó la misma con una Declaración Jurada suscrita por la señora Núñez quien aseveró que le permitía al señor Medina pernoctar

ocasionalmente como huésped en su casa, pero negó haber convivido con él.

El 3 de mayo de 2009, en respuesta a una carta de la Procuradora General solicitándole que abundase sobre la alegada convivencia, el licenciado Salas una vez más indicó que entendía que el querellante no convivía con la señora Núñez, sino que pernoctaba algunas noches en su casa.

Es importante señalar que disponer de la polémica asociada a la convivencia según planteada en este caso se dificulta porque implica un conocimiento más profundo de los detalles de la vida cotidiana en el hogar de la señora Núñez. No existe evidencia en el expediente que denote que el licenciado Salas tuviese conocimiento personal de la dinámica familiar durante el periodo entre mayo de 2006 y noviembre de 2007, ni el alcance del envolvimiento del señor Medina en sus obligaciones como padre cuando pernoctaba allí. Tampoco se acredita que conocía de aportaciones económicas del querellante a los gastos del hogar en el transcurso de este periodo de tiempo.

Destacamos que la supuesta convivencia, según alegada por el señor Medina, no resultó fácilmente establecida ante el Tribunal de Primera Instancia debido a la imprecisión de los hechos concernientes. Tanto es así, que la misma fue inicialmente rechazada en varias ocasiones por el Tribunal de Primera Instancia. Cónsono

con lo anterior, el 23 de abril de 2008 y el 18 de junio de 2008, respectivamente, se encontró al querellante incurso en desacato por no pagar la pensión alimentaria.

No fue sino hasta el 25 de noviembre de 2008 que el foro de instancia, vía reconsideración, determinó que el señor Medina había logrado demostrar que convivió con su ex esposa durante aproximadamente año y medio (1 1/2) según alegado.[2] Igualmente, dictaminó que en el periodo de convivencia el querellante aportó económicamente a la relación, por lo cual no existía la deuda reclamada.

También resultó ser éste un tema difícil para el propio Comisionado Especial quien expuso que "los detalles de la relación eran suficientemente nebulosos para que cualquier abogado razonable abrigara dudas sobre si la misma constituía una defensa efectiva a la falta de pago de la pensión". Informe del Comisionado, Determinaciones de Hecho, párrafo 12, pág. 4.

---

[2] En su Resolución de 25 de noviembre de 2008, página 4, el Tribunal de Primera Instancia distinguió entre la obligación de los padres de proveer alimentos conforme las disposiciones de los Artículos 142 y 153 del Código Civil, 31 L.P.R.A. secs. 561 y 601 (1993), respectivamente, dependiendo de si viven o no junto a sus hijos. A esos efectos, explicó lo siguiente:

> Debe estar claro que en ánimo de garantizar que los padres no custodios cumplan con lo anterior, los Tribunales fijan la pensión alimentaria que corresponda según sus medios y fortuna. Sin embargo, si el menor reside bajo el mismo techo que los padres, y aportan a su desarrollo supliendo las necesidades básicas de alimentación, educación, y otras, cualquier cantidad que el Tribunal imponga debe ser excluida por inoperante. Si las partes reanudan su relación, y deciden convivir, la pensión alimentaria que les fuera fijada es inoficiosa, y el Tribunal, a solicitud de parte, puede concluir que la misma sea descartada.

A base de lo anterior, concluimos que no existe evidencia robusta, clara y convincente de que el licenciado Salas retuvo información, suministró datos contrarios a la realidad, o manipuló los hechos para acomodarlos a la reclamación de su prima y cliente. Concluimos, por lo tanto, que tampoco se quebrantó lo provisto en el Canon 35 del Código de Ética.

Aun así, no podemos dejar pasar por alto la situación delicada que se produce cuando un abogado representa los intereses de un familiar, particularmente en casos donde impera la hostilidad entre los litigantes. Tal como sucede en algunos divorcios, existen pleitos en que se conjugan factores subjetivos muy poderosos que transportan la animosidad de las partes al ámbito judicial, según advertimos en Lizarríbar v. Martínez Gelpí, 121 D.P.R. 770 (1988).

Por consiguiente, apercibimos a los abogados a que actúen con mucha cautela en la representación de sus parientes. Les recomendamos estar muy atentos, pues en este tipo de escenario puede fácilmente perderse la objetividad en los procesos e incurrir, sin darse cuenta, en una conducta sancionable. Es menester conocer sus límites según fijados por los Cánones del Código de Ética y tener siempre presente cuál es su rol en el desarrollo del caso.

## VI

En resumen, concurrimos con el sentir del Comisionado Especial en su Informe a los efectos de que, a base de la evidencia sometida, no se infringieron los Cánones 15 y 17 del Código de Ética. De otra parte, determinamos que tampoco se incumplió con las disposiciones del Canon 35 del Código de Ética, por lo que se ordena el archivo de la Querella.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

GILBERTO SALAS ARANA | **Núm.** **CP-2010-007**

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de abril de 2013.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, concurrimos con el sentir del Comisionado Especial en su Informe a los efectos de que, a base de la evidencia sometida, no se infringieron los Cánones 15 y 17 del Código de Ética. De otra parte, determinamos que tampoco se incumplió con las disposiciones del Canon 35 del Código de Ética, por lo que se ordena el archivo de la Querella.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Estrella Martínez concurre sin opinión, la Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Rivera García no intervinieron.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo