ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **JOSUE DANIEL QUIÑONES OSORIO JUANITA CASTRO DÍAZ,** ambos por sí y en representación de la Sociedad Legal de Gananciales<br><br>Apelantes<br><br>v.<br><br>**RAFAEL VISSEPO RUTHGALLY QUIÑONES, por sí en representación de la Sociedad Legal de Gananciales ÁNGEL LÓPEZ FORTY y MARIBEL DE LÓPEZ** ambos por sí y en representación de la Sociedad Legal de Gananciales<br><br>Demandantes - Apelados<br><br>**MUNICIPIO DE RIO GRANDE**<br><br>Demandados - Apelados | KLAN202400440 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Carolina**<br><br>Civil Núm.: **FAC 00-0036**<br><br>Sobre: Deslinde de Finca, Reivindicación Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 27 de junio de 2024.

Comparece ante nos, mediante *Apelación* presentada el 3 de mayo de 2024, la señora Juanita Castro Díaz (Sra. Castro Díaz) y nos solicita que revoquemos la *Sentencia Estipulada*[1] del Tribunal de Primera Instancia, Sala Superior de Carolina (TPI). Mediante dicha determinación, el TPI excluyó a la Sra. Castro Díaz de la causa de acción por ella carecer de legitimación activa.

Por los fundamentos que discutiremos a continuación, confirmamos la determinación del TPI.

---

[1] Apéndice del recurso de *Apelación*, Anejo 2, págs. 4-9. Notificada el 29 de diciembre de 2023 y archivada en autos el 13 de diciembre de 2023.

Número Identificador
SEN2024 _____

**I.**

El caso de marras originó el 21 de enero de 2000, luego de que el señor Josué Daniel Quiñones Osorio (Sr. Quiñones), la Sra. Castro Díaz y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, los Demandantes) radicaron una *Demanda*[2] por deslinde de finca, reivindicación y daños y perjuicios, en contra de Rafael Vissepó, Ruthgally Quiñones, Ángel López Forty y Maribel de López (en conjunto, los Codemandados). En la *Demanda*, los Demandantes alegaron que los Codemandados "ilegalmente y sin consentimiento de la parte demandante [han] movido los puntos de colindancia de los lotes 11 y 8 ocupando de esta forma terrenos propiedad de la parte demandante e impidiéndole el uso y disfrute de su propiedad".[3]

El 14 de febrero de 2000, los Codemandados contestaron la *Demanda* e instaron una *Reconvención*.[4] Esta fue enmendada en octubre de 2000. En esta, alegaron que "los demandantes con frecuencia hacen imputaciones de que los demandados mueven colindancias y que la entrada no es por donde aparece. Con frecuencia [los Demandantes] están tan pendientes de lo que hacen los demandados que interfieren con la paz y tranquilidad de estos, turbando la misma".[5] Por estas razones,[6] solicitaron la indemnización de los Demandantes por daños y perjuicios.

El 20 de septiembre de 2001, el TPI nombró al agrimensor señor Aurelio Tardy como perito en el caso. El 14 de febrero de 2002, este presentó su informe y recomendó realizar levantamiento o

---

[2] *Íd.*, Anejo 4.1, págs. 45-46.
[3] *Íd.*, pág. 46.
[4] *Íd.*, Anejo 4.3, págs. 50-52.
[5] *Íd.*, pág. 51.
[6] Los Codemandados alegaron además que los Demandantes han desviado aguas hacia las colindancias de los Codemandados, han operado vehículos pesados y dejado desperdicio en los terrenos de los Codemandados y que la Sra. Castro Díaz los ha amenazado con un machete. *Íd.*, págs. 51-52.

mensura de la finca o parcelas y, a base de estas cabidas, enmendar las escrituras de las propiedades.[7]

El 17 de noviembre de 2005, el TPI celebró una vista en la cual comparecieron los Demandantes y los Codemandados.[8] En la vista, el licenciado Older Oller Córdova (Lcdo. Oller), representante legal de los Demandantes, le solicitó al TPI que lo relevara de su deber de representar a sus clientes. Sobre este, señaló el Lcdo. Oller que solicitaba la renuncia porque el Sr. Quiñones no tenía su aval ni consentimiento al acuerdo entre las partes. Esto pues surge que el acuerdo no había sido discutido entre el Sr. Quiñones y su abogado. Por lo tanto, puso al demandante Sr. Quiñones a la disposición de la Honorable Eva Araya de Martínez para que le pudiera preguntar sobre el acuerdo.[9]

Durante la vista y a preguntas de la jueza, las partes le informaron al TPI que habían llegado a un acuerdo sobre las colindancias de los terrenos. La Honorable Eva Araya de Martínez les preguntó sobre el contenido del acuerdo y si las partes estuvieron obligadas a consentir al mismo.[10] Todas las partes afirmaron que su consentimiento al acuerdo fue libre y voluntario y sin obligación por parte de terceros.[11] Los Codemandados, por su parte, acordaron desistir de su reconvención contra los Demandantes.

Además, la Sra. Castro Díaz compareció y fue llamada a expresarse. Durante su testimonio, la Sra. Castro Díaz aceptó que existía una casa construida sobre el terreno, perteneciente a la Sociedad Legal de Gananciales entre ella y su esposo.[12] Además, fue informada que el terreno sobre el cual estaba construida la casa ganancial no le pertenecía a la Sociedad Legal de Gananciales, sino

---

[7] *Íd.*, Anejo 4.5, págs. 54-60.
[8] *Íd.*, Anejo 4.8, págs. 76-120.
[9] *Íd.*, pág. 82.
[10] *Íd.*, págs. 108-109.
[11] *Íd.*, pág. 109.
[12] *Íd.*, págs. 98-99.

privativamente al Sr. Quiñones. En consecuencia, la porción del terreno afectada por el acuerdo le pertenecía privativamente al Sr. Quiñones y no a la SLG.

Así las cosas, el 8 de febrero de 2006, el TPI dictó una *Sentencia por Estipulación*. En esta, el Tribunal hizo constar que el Sr. Quiñones y los Codemandados llegaron a unos acuerdos sobre los deslindes de las propiedades. Como resultado, el TPI impartió su total aprobación de los acuerdos y dictó sentencia en los términos expresados en esta. Por otro lado, el TPI desestimó la causa de acción de la Sra. Castro Díaz por entender que ella carecía de legitimación activa individualizada para ser parte en el pleito. En específico, determinó que:

> En el ejercicio de nuestra discreción judicial, determinamos excluir a la señora Juanita Castro Díaz de la presente causa de acción por falta de legitimación en causa. **Si bien la casa construida por los demandantes es de carácter ganancial, los terrenos donde enclava le fueron donados al codemandante Josué Daniel Quiñones por sus padres**. **Valga aclarar que como cuestión de derecho es ganancial el suelo donde se ha construido la casa, pero que la controversia sobre las colindancias de la cuerda de terreno con los demandados es asunto que concierne única y exclusivamente al codemandante Josué Daniel Quiñones** y no a la Sociedad Legal de Gananciales y su esposa Juanita Castro Díaz. Por lo tanto, la reclamación de daños y perjuicios de la parte demandante es consustancial con el título de los terrenos de la colindancia y ningún otro, corresponde así también al codemandante Quiñones Osorio. **La señora Juanita Castro Díaz no tiene una capacidad individualizada y concreta en la reclamación de autos**.[13]

Por lo tanto, según el razonamiento del TPI, la Sra. Castro Díaz no se vio afectada por los cambios y modificaciones de las colindancias de los terrenos, puesto que ella no era titular de ellos. Únicamente tenía un derecho propietario sobre la casa construida en el terreno, que era de carácter ganancial. El resto del terreno le pertenecía únicamente al Sr. Quiñones por virtud de una donación.

---

[13] *Íd.*, Anejo 2, pág. 7. (Énfasis nuestro).

Por carecer de legitimación activa, procedía la desestimación de la causa de acción de la Sra. Castro Díaz.

Por varios impedimentos y trabas procesales, la *Sentencia por Estipulación* no fue notificada hasta el 29 de diciembre de 2023, mediante un edicto publicado en el periódico El Vocero. Ese mismo día, la Sra. Castro Díaz presentó una *Moción de Reconsideración* ante el TPI.[14] Cabe señalar que el Sr. Quiñones falleció el 2 de febrero de 2022 y, como consecuencia, la Sra. Castro Díaz adquirió derechos sobre una porción de la herencia de su esposo. En su *Reconsideración*, la Sra. Castro Díaz solicitó que el TPI decretara la nulidad de la *Sentencia por Estipulación* puesto que la Sra. Castro Díaz nunca proveyó su consentimiento al acuerdo entre su esposo y los Codemandados. El 25 de marzo de 2024, el TPI declaró No Ha Lugar a la *Reconsideración*.[15] Esta fue notificada el 3 de abril de 2024.

Inconforme, el 3 de mayo de 2024, la Sra. Castro Díaz recurrió a este Foro mediante *Apelación*. En dicha comparecencia, señaló cinco errores, los cuales están transcritos a continuación:

> **ERROR #1: COMETIÓ ERROR EL TRIBUNAL AL EXCLUIR A LA CO-DEMANDANTE JUANITA CASTRO DÍAZ DE LA CAUSA DE ACCIÓN INCOADA EN EL CASO CIVIL FAC2000-0036 SOBRE [D]ESLINDE Y REIVINDICACIÓN CUYA *SENTENCIA POR ESTIPULACIÓN* A BASE DE LO RESUELTO EN <u>SALAZAR V. REGISTRADOR</u>, 27 DPR 63 (1919)[.]**

> **ERROR #2: COMETIÓ ERROR EL TPI RECURRIDO AL EXCLUIR A LA SEÑORA JUANITA CASTRO DE LA CAUSA DE ACCIÓN EN EL [CASO] RECURRIDO SI DICHA CO-DEMANDANTE ERA PARTE INDISPENSABLE DE DICHO PLEITO. CONFORME AL ARTICULO 1304 DEL CÓDIGO CIVIL DE PUERTO RICO, 31 [LPRA] 3644, Y SU JURISPRUDENCIA INTERPRETATIVA[.]**

> **ERROR #3: COMETIÓ ERROR EL TPI RECURRIDO, A LA LUZ DE LAS CIRCUNSTANCIAS QUE RODEAN LA *SENTENCIA POR ESTIPULACIÓN* [EN] EL CASO RECURRIDO SOBRE [D]ESLINDE Y REIVINDICACIÓN, SI EL CONSENTIMIENTO**

---

[14] *Íd.*, Anejo 3, págs. 11-44.
[15] *Íd.*, Anejo 1, págs. 1-3.

**OFRENDADO POR EL CO-DEMANDANTE JOSUÉ QUIÑONES A LOS ACUERDOS ANUNCIADOS DURANTE LA *VISTA DE MOCIÓN URGENTE* EN DICHO CASO, FUE CONSENTIMIENTO INFORMADO, CON PLENA CONCIENCIA DE LAS CONSECUENCIAS QUE DICHOS ACUERDOS ACARREARÍAN SOBRE EL VALOR DE SU PATRIMONIO Y EL DE LA SLG, Y SOBRE LA RENUNCIA A SUS DERECHOS QUE DICHOS ACUERDOS IMPLICABAN.**

**ERROR #4: COMETIÓ ERROR EL TPI RECURRIDO AL ACEPTAR COMO BUENAS [sic] DICHOS ACUERDOS QUE TIENE EL EFECTO DE ANULAR DICHA *SENTENCIA POR ESTIPULACIÓN*.**

**ERROR #5: COMETIÓ ERROR EL TPI [R]ECURRIDO AL PERMITIR LA RENUNCIA DEL ABOGADO DE LOS DEMANDANTES AQUÍ RECURRENTE[S], CUYO EFECTO FUE ACTUAR EN VIOLACIÓN A LA REGLA 9.4 DE PROCEDIMIENTO CIVIL, 32 [LPRA] AP. V, R. 9.4, Y PERMITIR LA CONTINUACIÓN DE LOS PROCEDIMIENTOS Y FORZAR UNA SENTENCIA POR ESTIPULACI[Ó]N[.]**

En resumen, la Sra. Castro Díaz ha recurrido al Tribunal de Apelaciones para cuestionar: (1) su exclusión del caso por alegadamente carecer de legitimación activa por no ser titular del terreno afectado por el acuerdo (Errores 1 y 2); (2) el consentimiento que otorgó el Sr. Quiñones al acuerdo y la *Sentencia por Estipulación* por alegadamente desconocer de los efectos y consecuencias que dicha sentencia tendría sobre su patrimonio y sus derechos (Error 3); y, (3) la renuncia del Lcdo. Oller como representante legal de la parte Demandante como una alegada violación de la Regla 9.4 de Procedimiento Civil, *supra.*

Por su parte, el 12 de junio de 2024, la parte apelada presentó su *Alegato en Oposición.* Con la comparecencia de ambas partes, nos encontramos en posición para atender las controversias señaladas por la Sra. Castro Díaz.

## II.

### A.

Los tribunales solo pueden atender casos que son justiciables, donde exista una controversia, y no en aquellas circunstancias donde exista una disputa abstracta, cuya resolución no tendrá

consecuencias para las partes. *Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 931 (2011); *Fund. Surfrider y otros v. A.R.Pe.,* 178 DPR 563, 571 (2010); *E.L.A. v. Aguayo,* 80 DPR 552 (1958). La justiciabilidad es una autolimitación de los tribunales. Solo podemos resolver "controversias genuinas surgidas entre partes opuestas que tienen interés real en obtener un remedio que haya de afectar sus relaciones jurídicas". *E.L.A. v. Aguayo, supra,* págs. 558-559. Nuestro Tribunal Supremo ha desarrollado criterios que los tribunales deben considerar para determinar si un caso es justiciable.

> Para que una controversia sea justiciable se debe evaluar si es (1) tan definida y concreta que afecte las relaciones jurídicas entre las partes que tienen un interés jurídico antagónico; (2) que el interés sea real y substancial y que permita un remedio específico mediante una sentencia de carácter concluyente, y finalmente (3) si la controversia es propia para una determinación judicial, ya que se distingue de una disputa de carácter hipotético o abstracto, y de un caso académico o ficticio. Por lo tanto, **no será justiciable aquella controversia en la que**: (1) se trata de resolver una cuestión política; (2) **una de las partes no tiene legitimación activa**; (3) después que ha comenzado el pleito, hechos posteriores la convierten en académica; (4) las partes buscan obtener una opinión consultiva, o (5) se promueve un pleito que no está maduro.
>
> *Asoc. Fotoperiodistas v. Rivera Schatz, supra,* pág. 932. (Énfasis nuestro).

"Una de las doctrinas de autolimitación derivadas del principio de 'caso o controversia' es la legitimación de la parte que acude ante el foro judicial". *Fund. Surfrider v. A.R.Pe., supra,* pág. 572. "La legitimación activa es una de las doctrinas que forman parte de la figura general de la justiciabilidad que opera actualmente en nuestro ordenamiento". J. Farinacci Fernós, *La justiciabilidad en Puerto Rico,* 1ª ed. rev., San Juan, Ed. InterJuris, 2024, pág. 121. Legitimación es la capacidad jurídica y la capacidad para actuar. "Es la capacidad para realizar con eficiencia actos procesales y para comparecer como litigante en un juicio. J.A. Echevarría Vargas, *Procedimiento civil puertorriqueño,* 1ª ed. rev., San Juan, 2012, pág.

34. En *Fund. Surfrider v. A.R.Pe.*, *supra,* el Tribunal Supremo aclaró que para que una parte tenga legitimación, tiene que haber sufrido un daño claro y palpable, real, inmediato y preciso, no abstracto o hipotético. Debe existir una relación causal razonable entre la acción que se ejercita y el daño alegado, y la causa de acción debe surgir al amparo de la Constitución o de alguna ley.

**B.**

La Sociedad Legal de Gananciales (SLG) es el régimen económico que regula la institución del matrimonio en Puerto Rico y la titularidad de los bienes adquiridos por un matrimonio. *Torres Zayas v. Montano Gómez et als.*, 199 DPR 458, 465 (2017). "Bajo este régimen, los cónyuges figuran como codueños y administradores de todo el patrimonio matrimonial sin adscribírsele cuotas específicas a cada uno". *Íd.* En lo concerniente a la administración de las SLG, el Art. 91 del Código Civil de 1930[16] dispone que "[a]mbos cónyuges serán los administradores de los bienes de la sociedad conyugal, salvo estipulación en contrario [...]". *Íd.*, Art. 91, 31 LPRA sec. 284.

El Art. 1296 dispone que "[l]a sociedad de gananciales empezará precisamente en el día de la celebración del matrimonio o, posteriormente, al tiempo de pactarse mediante el otorgamiento de capitulaciones". *Íd.*, Art. 1296, 31 LPRA sec. 3622. Finalmente, el Art. 1295 dispone que "[m]ediante la sociedad de gananciales, los cónyuges harán suyos por mitad, al disolverse la misma, las ganancias o beneficios obtenidos indistintamente por cualquiera de los cónyuges durante la sociedad". *Íd.*, Art. 1285, 31 LPRA sec. 3621. Por lo tanto, salvo que las partes hayan pactado capitulaciones o que la ley disponga lo contrario, la norma general

---

[16] Sabido es que el Código Civil de 1930 fue derogado tras la aprobación de la Ley Núm. 55-2020. Sin embargo, en el caso ante nuestra consideración, es de aplicación el Código derogado puesto que era el Código vigente al momento de los hechos.

es que los bienes que adquieren los cónyuges durante el matrimonio serán de carácter ganancial. *Íd.*, Art. 1301, 31 LPRA sec. 3641. Así, existe una presunción rebatible a favor del carácter ganancial de los bienes del matrimonio. *Íd.*, Art. 1307, 31 LPRA sec. 3647.

A modo de excepción a la norma antes dispuesta, el Art. 1299 dispone que "**[s]on bienes propios de cada uno de los cónyuges: [...] (2) [l]os que adquiere durante él, por título lucrativo, sea por donación, legado o herencia**". *Íd.*, Art. 1299, 31 LPRA sec. 3631. (Énfasis nuestro). Por lo tanto, son privativos de cada cónyuge aquellos bienes adquiridos mediante donación. Sobre la administración de estos bienes, el Art. 92 dispone que "[e]l marido y la mujer **tendrán el derecho de administrar y disponer libremente de sus respectivas propiedades particulares**". *Íd.*, Art. 92, 31 LPRA 285. (Énfasis nuestro).

### C.

En Puerto Rico, existen varias medidas de protección de dominio. Dos de las más frecuentemente utilizadas son la acción reivindicatoria y de deslinde.

"Mediante la acción reivindicatoria, el propietario reclama su cosa de quien la tenga o posea. Debe identificar adecuadamente dicho objeto, probar que es suyo y probar que está indebidamente en posesión del demandado". *Ramírez Quiñones v. Soto Padilla*, 168 DPR 142, 157 (2006); Código Civil de 1930, *supra*, Art. 280, 31 LPRA sec. 1111. Como requisito para llevar una acción reivindicatoria, **el demandante tiene que probar que tiene el título sobre el bien** "y no puede descansar únicamente en los vicios que tenga el título del demandado". *Ramírez Quiñones v. Soto Padilla*, *supra*, pág. 157. Por lo tanto, surge claramente que únicamente aquella persona con título está legitimada para instar una acción reivindicatoria.

Por otro lado, la acción de deslinde "se otorga a **todos los propietarios** cuyas propiedades limítrofes tienen confundidos sus

linderos por causas naturales, accidentes fortuitos o actos voluntarios de tercero, debiendo concurrir todos a un solo juicio". J.M. Manresa, *Comentarios al Código Civil Español,* 6ª ed. rev., Ed. Reus S.A., 1934, Vol. III, pág. 305. (Énfasis nuestro). Esta "tiene el propósito de determinar los linderos confundidos de dos heredades contiguas". *Ramírez Quiñones v. Soto Padilla, supra,* pág. 157. "...tiene el único efecto de precisar las colindancias de determinados inmuebles. Dicha sentencia no da ni quita derechos". *Íd.,* pág. 158. (Cita omitida). Por lo tanto, la diferencia principal entre la acción reivindicatoria y el deslinde es que en la reivindicatoria, una parte intenta reclamar un terreno sobre el cual tiene un derecho reconocido, en lo que en el deslinde, las partes no están reclamando derechos, sino fijando los límites de sus terrenos. Como resultado del deslinde, entiéndase la fijación de los derechos de un propietario, puede surgir una acción reivindicatoria. *Zalduondo v. Méndez,* 74 DPR 637, 64-645 (1953). Es por esto por lo que ambas acciones pueden instarse simultánea o sucesivamente.

De las definiciones y criterios de ambas acciones de protección de dominio, surge que quienes están legitimados para instarlas son los titulares y propietarios de los bienes inmuebles. Por lo tanto, estas personas deben tener un derecho reconocido sobre la propiedad o propiedades en controversia. Un tercero sin derecho no está legitimado para instar una acción de esta naturaleza. Es imperativo, por lo tanto, determinar si un cónyuge está legitimado para llevar una acción de deslinde o reivindicación a favor de la propiedad privativa de otro cónyuge. Puesto de una forma más concisa, si un cónyuge es titular o propietario de la propiedad privativa de otro cónyuge.

En *Salazar v. Registrador,* 27 DPR 63 (1919), nuestro Tribunal Supremo tuvo la oportunidad de revisar una denegatoria a una inscripción de una hipoteca en el Registro de la Propiedad de San

Juan. En las circunstancias de aquel caso, unos cónyuges vendieron una propiedad, cuyos terrenos le pertenecían privativamente al marido, pero la casa construida sobre esos terrenos le pertenecía gananancialmente a ambos cónyuges. La controversia en aquel caso versaba sobre la extensión del Artículo 1319 del Código Civil d Puerto Rico de 1902. Ese Artículo disponía que:

> [S]erán bienes gananciales los edificios [construidos] durante el matrimonio en suelo propio de uno de los cónyuges, abonándose el valor del suelo al cónyuge a quien pertenezca; y en su consecuencia, con arreglo a ese precepto legal **cuando los edificios se construyen en suelo de la exclusiva propiedad de uno de los cónyuges, [el] suelo y [las] edificaciones pasan a tener la condición de gananciales, siempre que las edificaciones se hagan a expensas de esa sociedad**.

> *Íd.* (Énfasis nuestro).

Según la interpretación de los recurrentes, esto significaba que al haberse construido una casa ganancial sobre los terrenos privativos de uno de los cónyuges, la totalidad de los terrenos adquirían un carácter ganancial. El Tribunal rechazó dicha interpretación.

> No es posible pretender[,] como pretende el recurrente[,] que una finca de 28 cuerdas de la exclusiva propiedad del marido pase a ser ganancial por el hecho de haber levantado en ella la sociedad conyugal una casita de madera techada de zinc, y que otra finca de mayor cabida aún, o sea de 89 cuerdas, también de la propiedad del marido, pase a ser ganancial por el hecho de haber levantado en ella la sociedad conyugal una casa de madera con techo de zinc, dos casitas más y dos ranchones también de madera y techo de zinc.

> *Íd.*

En consecuencia, el Tribunal sostuvo que el Art. 1319 debió ser interpretado restrictivamente para que solo adquieran carácter ganancial las edificaciones construidas a costas de fondos gananciales y los suelos sobre cuales estas se construyen. *Íd.*

El Art. 1319 del Código Civil de 1902 fue incorporado al Código Civil de 1930 mediante el segundo párrafo del Art. 1304, 31 LPRA sec. 3644. Este dispone que:

> Las expensas útiles, hechas en los bienes peculiares de cualquiera de los cónyuges mediante anticipaciones de la sociedad o por la industria del marido o de la mujer, son gananciales.
> **Lo serán también los edificios construidos durante el matrimonio en suelo propio de uno de los cónyuges, abonándose el valor del suelo al cónyuge a quien le pertenezca**.

*Íd.* (Énfasis nuestro).

Al igual que el Art. 1319 del Código de 1902, el Art. 1304 del Código de 1930 dispone que adquirirán carácter ganancial los edificios construidos con fondos gananciales y **los suelos** sobre cuales se construyan. El Tribunal Supremo le ha dado alta importancia al uso de la palabra "suelo", pues esta debe entenderse restrictivamente como "**la superficie de terreno dedicada al edificio y no cualquier extensión de terreno de que forme parte aquella superficie**". *Salazar v. Registrador, supra.* (Énfasis nuestro). Esto puesto que, en nuestro ordenamiento, rige la norma de que lo accesorio sigue a lo principal.[17] Al ser el Art. 1304 del Código de 1930 una excepción a la norma señalada, este debe ser interpretado restrictivamente. *Íd.*; *Pueblo v. Pérez Casillas*, 126 DPR 702, 709 (1990) ("Sabido es que en nuestra tarea de interpretar estatutos, hemos adoptado un enfoque restrictivo cuando nos enfrentamos a las excepciones de un principio general").

En consecuencia, es forzoso concluir que al amparo del segundo párrafo del Art. 1304 del Código Civil de 1930, *supra*, únicamente adquiere carácter ganancial la porción del terreno privativo de un cónyuge sobre la cual se construye una edificación ganancial.

---

[17] Lo edificado, plantado o sembrado en predios ajenos y las mejoras hechas en ellos pertenecen al dueño de los mismos. Entiéndase la casa construida como lo accesorio y el terreno como lo principal.

**D.**

Un contrato es el negocio jurídico entre dos o más personas donde las partes contratantes se obligan a dar, hacer o no hacer una cosa. El Artículo 1044 del Código Civil de 1930, *supra*, 31 LPRA sec. 2994 dispone que "[l]as obligaciones que nacen de los contratos tienen **fuerza de ley entre las partes** contratantes, y deben cumplirse a tenor de los mismos". (Énfasis nuestro). En consecuencia, los contratantes pueden exigir el cumplimiento específico con las cláusulas y condiciones pactadas. *Casera Foods v. E.L.A.*, 108 DPR 850 (1979).

El valor y protección que le confiere nuestro ordenamiento jurídico a las obligaciones que nacen por virtud de los contratos se debe a que, en Puerto Rico, rige el principio de libertad de contratación, también conocido como la autonomía de la voluntad. *Arthur Young & Co. v. Vega III*, 136 DPR 157, 169 (1994). Ello implica que los tipos de pactos a que pueden llegar los contratantes están tan sólo limitados por su imaginación, siendo la voluntad de las partes la ley suprema entre ellos. Por lo tanto, las partes pueden pactar cualquier condición o cláusula que no sea contraria a la ley, moral u orden público. Código Civil de 1930, *supra*, Art. 1207, 31 LPRA sec. 3372.

Para que un contrato adquiera la fuerza de ley, es necesario su perfeccionamiento. "Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". *Íd.*, Art. 1210, 31 LPRA sec. 3375. Esto se refiere a la manifestación de voluntad por parte de los contratantes para obligarse a cumplir con lo acordado. Para que se manifieste el consentimiento, el contratante debe tener la capacidad para consentir y debe externalizar su voluntad.

El Artículo 1215 del Código Civil de 1930, *Íd.*, 31 LPRA sec. 3402, dispone que no pueden prestar consentimiento los menores no emancipados, los locos o dementes y los sordomudos que no sepan escribir. El Artículo 1216, *Íd.*, 31 LPRA sec. 3403, dispone que la incapacidad declarada en el Art. 1215 está sujeta a las modificaciones que la ley determina y se entiende sin perjuicio a las incapacidades especiales que esta establece. "De los anteriores preceptos, podemos deducir la regla general al efecto de que **se presume la capacidad de las personas para contratar**". J.R. Vélez Torres, *Curso de Derecho Civil: derecho de contratos*, San Juan, Ed. Rev. Jur. U.I.A., 1990, T. IV, Vol. II, pág. 20. (Énfasis nuestro). Los Artículos 1215 y 1216 constituyen excepciones.

Entre las excepciones a la capacidad para consentir, existen aquellas aplicables a los cónyuges cuyos bienes se rigen bajo una Sociedad Legal de Gananciales. En particular, el Artículo 91 del Código Civil de 1930, *supra*, 31 LPRA sec. 284, dispone que "[l]os bienes inmuebles de la sociedad conyugal no podrán ser enajenados o gravados, bajo pena de nulidad, sino mediante el consentimiento escrito de ambos cónyuges". Sin embargo, como ya hemos señalado, los bienes privativos de cada cónyuge podrán ser administrados libremente sin la consulta o anuencia del otro cónyuge. *Íd.*, Art. 92, 31 LPRA sec. 285.

En cuanto a la prestación del consentimiento, para esto solo es necesario el "concurso de la oferta y de la aceptación sobre la cosa y la causa que han de constituir el contrato". *Íd.*, Art. 1214, 31 LPRA sec. 3401. Según el tratadista José Ramón Vélez Torres, esto es que "dos o más personas (partes contratantes) logran un acuerdo para crear, mediante el ejercicio de su voluntad, una relación jurídica obligatoria". J.R. Vélez Torres, *op. cit.*, pág. 35. Para validar la aceptación de una oferta, es imprescindible que esta cumpla con los siguientes requisitos: (1) debe coincidir en todos sus términos con

la oferta; (2) debe ser pura y simple; (3) debe ser oportuna; (4) debe ser recepticia; y, (5) debe ser externalizada. *Íd.*, pág. 38.

Ahora bien, el consentimiento puede ser declarado nulo cuando fue prestado por error, violencia, intimidación o dolo. Código Civil de 1930, *supra*, Art. 1217, 31 LPRA sec. 3404. Pertinente al caso ante nuestra consideración es la nulidad del consentimiento causada por el error. Además, no podemos perder de perspectiva que la parte apelante cuestiona el consentimiento dado en una *Sentencia por Estipulación*, que ha sido interpretado como un contrato de transacción. *Betancourt González v. Pastrana Santiago*, 200 DPR 169 (2018). Por lo tanto, también debemos analizar las disposiciones en el Código Civil de 1930 pertinentes a los contratos de transacción.

Según el primer párrafo del Artículo 1218 del Código Civil de 1930, "[p]ara que el error invalide el consentimiento, deberá recaer sobre la sustancia de la cosa que fuere objeto del contrato, o sobre aquellas condiciones de la misma que principalmente hubiesen dado motivo a celebrarlo". *Íd.*, 31 LPRA sec. 3405. Entiéndase que el Artículo 1218 también contempla otras clases de error, como el error en la persona y el error en la cuantía. Cuando medie un error que no recae sobre la sustancia, este es subsanable. *Íd.* Por su parte, el Art. 1716 del Código Civil de 1930, versa sobre el error en los contratos de transacción. Este dispone que:

> La transacción en que intervenga error, dolo, violencia o falsedad de documentos está sujeta a lo dispuesto en el artículo 1217 (sec. 3404) de este título.
> **Sin embargo, no podrá una de las partes oponer el error de hecho a la otra siempre que ésta se haya apartado por la transacción de un pleito comenzado**.

*Íd.*, 31 LPRA sec. 4828. (Énfasis nuestro).

El Artículo 1716 distingue el error de hecho, o el error sobre la sustancia de la cosa, de las otras causas para declarar nulo el consentimiento de una parte en un contrato de transacción. "De

entrada debe reconocerse que la estructura y naturaleza de la transacción obliga a aplicar a ésta con suma cautela la doctrina del error". *Citibank v. Dependable Ins. Co., Inc.*, 121 DPR 503, 519 (1988). (Cita omitida). Este Artículo existe para darle fuerza y confiabilidad a las transacciones judiciales. "[S]i una parte se retira de un pleito comenzado como consecuencia de una transacción, la otra parte no le podrá oponer el error de hecho. [...] [M]ás que una vinculación fundada en el acuerdo de voluntades, prevalece la fuerza de la protección dispensada a la confianza que una parte ha depositado en la conducta de la otra". J.R. Vélez Torres, *op. cit.*, págs. 506-507.

Nuestro derecho urge cautela al momento de aplicar el error a un contrato de transacción. Propicia que a estos contratos se le conceda mayores garantías de validez, puesto que mediante ellos las partes en un juicio renuncian sus derechos para litigar el caso, como también en consideración de los sacrificios de la parte que se apartó del litigio promovido. *Citibank v. Dependable Ins. Co., Inc.*, *supra*, pág. 521.

**E.**

La Regla 9.2 de Procedimiento Civil, *Íd.*, dispone que:

> Cuando un abogado o abogada que haya comparecido ante un tribunal en representación de un(a) cliente(a) solicite renunciar a esa representación, deberá presentar una moción por escrito a tal efecto. El abogado o abogada expondrá las razones por las cuales debe permitirse su renuncia e informará el número de teléfono y la dirección postal de quien represente. Hará constar, además, que ha notificado la renuncia a su cliente(a) y que ha cumplido con las exigencias de los cánones del Código de Ética Profesional. El tribunal tendrá facultad para rechazar la renuncia solicitada en aquellos casos excepcionales en que estime que los derechos de una parte podrían verse seriamente lesionados o que se retrasaría indebidamente el procedimiento.

Por su parte, la Regla 9.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 9.4 dispone que una parte podrá representarse en un pleito si cumple con los siguientes requisitos: (1) que la persona no está

representada por abogado o abogada; (2) que la decisión de autorrepresentación es voluntaria e inteligente, así como con pleno conocimiento de causa y de que la persona será tratada como cualquier otra parte representada por abogado o abogada; (3) que la persona puede representarse a sí misma de manera adecuada, de acuerdo a la complejidad de la controversia a adjudicarse; (4) que la persona tiene los conocimientos mínimos necesarios para defender adecuadamente sus intereses, cumplir con las reglas procesales y alegar el derecho sustantivo aplicable; y, (5) que la autorrepresentación no va a causar o contribuir a una demora indebida o a una interrupción de los procedimientos, que no entorpecerá la adecuada administración de la justicia ni atentará contra la dignidad del tribunal, de las partes o de sus abogados o abogadas. *Íd.*

Tanto la Regla 9.2 como la Regla 9.4 fueron incorporadas a las Reglas de Procedimiento Civil por primera vez tras la aprobación de las Reglas del 2009. Es decir, no estaban codificadas para el 2006, cuando el TPI emitió la *Sentencia por Estipulación*. Aun así, para el 2006, nuestro Tribunal Supremo había reglamentado la renuncia de representación y la autorrepresentación mediante jurisprudencia y el Reglamento para la Administración del Tribunal de Primera Instancia, 4 LPRA Ap. II-B.

La Regla 19 del Reglamento del Tribunal de Primera Instancia dispone que:

> Cuando un abogado o una abogada que haya comparecido ante un tribunal en representación de un cliente o de una clienta desee renunciar a dicha representación, deberá incluir en la solicitud que presente a esos fines las últimas direcciones residenciales y postales, tanto suyas como de la parte representada, y los números de teléfono correspondientes a cada cual; consignará que ha notificado a su cliente o a su clienta de su intención de renunciar a su representación; y dará cumplimiento a todo lo requerido por el Canon 20 de los del Ética Profesional, el Ap. IX de este título.

El Canon 20 de Ética Profesional, 4 LPRA Ap. IX, impone las obligaciones y responsabilidades que tiene un abogado al momento de renunciar la representación de su cliente. Esta dispone que:

Cuando el abogado haya comparecido ante un tribunal en representación de un cliente no puede ni debe renunciar la representación profesional de su cliente sin obtener primero el permiso del tribunal y debe solicitarlo solamente cuando exista una razón justificada e imprevista para ello.

Antes de renunciar la representación de su cliente el abogado debe tomar aquellas medidas razonables que eviten perjuicio a los derechos de su cliente tales como notificar de ello al cliente; aconsejarle debidamente sobre la necesidad de una nueva representación legal cuando ello sea necesario; concederle tiempo para conseguir una nueva representación legal; aconsejarle sobre la fecha límite de cualquier término de ley que pueda afectar su causa de acción o para la radicación de cualquier escrito que le pueda favorecer; y el cumplimiento de cualquier otra disposición legal del tribunal al respecto, incluyendo la notificación al tribunal de la última dirección conocida de su representado.

Al ser efectiva la renuncia del abogado debe hacerle entrega del expediente a su cliente y de todo documento relacionado con el caso y reembolsar inmediatamente cualquier cantidad adelantada que le haya sido pagada en honorarios por servicios que no se han prestado.

En cuanto a la autorrepresentación, el Tribunal Supremo esbozó las normas pertinentes a esta en *Lizarribar v. Martínez Gelpí*, 121 DPR 770 (1988). En aquella ocasión, el Tribunal Supremo determinó que para permitir la autorrepresentación, los tribunales deben considerar los siguientes criterios:

(a) la representación, como regla general, no puede ser híbrida, esto es, no debe estar representado por abogado y a la misma vez representarse por derecho propio; (b) la decisión tiene que haber sido tomada voluntariamente, de manera inteligente y con pleno conocimiento de causa; (c) tiene que hacerse mediante solicitud expresa (inequívoca) al tribunal; (d) debe ser formulada oportunamente, pues mientras más adelantado el proceso, mayor la discreción del juez para denegarla; (e) se tomará, además, en consideración la demora o interrupción de los procedimientos y su efecto sobre la adecuada administración de la justicia; (f) deberá atender asimismo el tribunal al factor de la calidad de la representación que la parte habrá de ser capaz de procurarse, así como la complejidad de la controversia a adjudicarse; (g) la parte o el acusado tendrá el deber de cumplir esencialmente con las reglas procesales y el derecho sustantivo aplicable, aunque no

se requerirá un conocimiento técnico de los mismos; (h) no está obligado el magistrado a ilustrar a quien opte por tal derecho acerca de esas leyes o reglas; (i) el magistrado tampoco viene obligado a nombrarle abogados asesores durante el proceso; (j) el magistrado no tiene el deber de inquirir respecto a las razones por las cuales ha elegido la representación por derecho propio, aunque en los casos que estime conveniente podría así hacerlo, y (k) finalmente, el magistrado tampoco tiene la obligación de informar al acusado o a las partes de su derecho a la autorrepresentación. Por último, y en armonía con la norma establecida en los casos de *Pueblo v. Santaella*, 91 D.P.R. 350 (1964), y *B. Muñoz, Inc. v. Prod. Puertorriqueña*, 109 D.P.R. 825 (1980), solamente las personas naturales pueden acudir a los tribunales en defensa de sus derechos bajo las circunstancias expuestas en esta opinión. **Cada una de estas consideraciones deberán ser justamente balanceadas por el tribunal, atendiendo las circunstancias particulares del caso, los intereses de las partes y la eficiencia en la administración de la justicia**.

*Íd.*, págs. 785-786. (Énfasis nuestro).

### III.

Antes de comenzar la aplicación del derecho a los hechos, debemos aclarar un asunto presente, pero que no afecta las conclusiones de este Tribunal. Unas de las particularidades de este caso es que la *Sentencia por Estipulación* apelada fue dictada en el 2006 y que han transcurrido más de diecisiete años para su resolución. Es meritorio aclarar que, contrario a lo que han argumentado los apelados, el lapso no es razón válida para denegar la revisión de una determinación del Tribunal de Primera Instancia o corregir posibles errores en derecho que se hayan cometido. Siempre que este Foro apelativo tenga jurisdicción, es nuestro deber velar y salvaguardar por los derechos de aquellas personas que acuden ante nos, al igual que revisar las determinaciones de los foros inferiores. Con este punto aclarado, podemos atender los errores señalados por la Sra. Castro Díaz.

Por estar íntimamente relacionados, atenderemos los primeros dos errores en conjunto. En estos, la Sra. Castro Díaz alega que el TPI erró al desestimar su causa de acción y excluirla del caso

por carecer de legitimación activa. Luego de evaluar el derecho aplicable, concluimos que no se cometió el error.

De la prueba sometida y de los documentos que obran en el expediente, surge claramente que para el 2006, el terreno de la parte apelante era terreno privativo del Sr. Quiñones, recibido como donación por parte de sus padres. La Sra. Castro Díaz no era titular ni propietaria de dicho terreno. También surge que sobre una porción de ese terreno, el Sr. Quiñones y la Sra. Castro Díaz construyeron una casa utilizando fondos gananciales. Por lo tanto, la Sra. Castro Díaz sí era titular de esa casa por virtud de su participación en la Sociedad Legal de Gananciales compuesta por ella y su esposo.

Como ya hemos señalado, el Código Civil de 1930 distinguía entre los bienes que le pertenecen a la SLG. Como norma general, luego de constituida la SLG, todo bien que entre en posesión de los cónyuges formaba parte de la Sociedad y tenía carácter ganancial. A modo de excepción, el Código Civil también reconocía una serie de bienes que los cónyuges podían adquirir y que mantendrían su carácter privativo. Entre estos, se contemplaban las donaciones hechas a un cónyuge en particular. Este es el caso del terreno del Sr. Quiñones.

Ahora bien, el Artículo 1304 del Código Civil de 1930, *supra*, dispone que las edificaciones construidas, y el suelo sobre cuales fueron construidas, se convierten en propiedad ganancial si fueron edificadas con fondos gananciales, aunque hayan sido construidas sobre terrenos privativos. Así, la casa construida sobre el terreno del Sr. Quiñones le pertenecía a la SLG compuesta por su esposa y él. No obstante, ya hemos adelantado que el Artículo 1304 es una excepción a la norma de que lo accesorio sigue a lo principal. Es decir, que la casa, siendo lo accesorio, adquiriría las propiedades y sería parte del terreno, lo principal. Como el Artículo 1304 es una

excepción, es nuestro deber interpretarla restrictivamente. *Salazar v. Registrador, supra.* En consecuencia, nuestro Tribunal Supremo se ha enfocado en la palabra "suelo" utilizada en ese Artículo y ha concluido que esta se refiere únicamente al suelo sobre el cual la edificación ganancial fue construida. En otras palabras, sólo un aparte del terreno pierde su carácter privativo, no la totalidad.

Es forzoso concluir que la Sra. Castro Díaz no tenía derecho a reclamar o tomar decisiones sobre la porción del terreno afectado por el acuerdo entre el Sr. Quiñones y los Codemandados. La única porción del terreno sobre el cual ella tenía derechos o intereses legítimos era la casa y su suelo. Sin embargo, y cónsono con el Artículo 92 del Código Civil de 1930, *supra,* 31 LPRA sec. 285, el Sr. Quiñones podía administrarlos libremente, sin la participación de su esposa. Al la Sra. Castro Díaz no tener titularidad ni ser propietaria del terreno afectado, carecía de legitimación activa para llevar una causa de acción en contra de los Codemandados. En consecuencia, no se cometieron los errores señalados al respecto.

Como próximo error, la Sra. Castro Díaz señaló que el TPI erró al validar un contrato de transacción sin el consentimiento informado del Sr. Quiñones. La realidad es que la Sra. Castro Díaz no ha puesto a este Tribunal en posición para adecuadamente determinar si se cometió o no el error. La única persona que podría testificar en cuanto al consentimiento otorgado, el Sr. Quiñones, falleció el 2 de febrero de 2022. Es quien único pudiese testificar en cuanto a su estado mental o sus creencias sobre el acuerdo entre las partes.

Aun así, la Sra. Castro Díaz nos ha presentado varios argumentos y aseveraciones sobre las circunstancias del consentimiento del Sr. Quiñones, pero estas no son suficientes para declarar el acuerdo nulo. No nos ha presentado prueba concreta para probar lo aseverado en su escrito de *Apelación.* Como única

prueba sobre la voluntad del Sr. Quiñones tenemos la *Transcripción de la Vista Urgente de 17 de noviembre de 2005*. En dicha vista, la jueza Araya de Martínez le hizo las siguientes preguntas a las partes:

"¿Todos están de acuerdo? ¿Alguien los ha obligado a tomar esta determinación?"[18] y las partes contestaron que no fueron obligados y que estaban de acuerdo.

"¿O sea, que es libre y voluntaria?"[19] y las partes contestaron en la afirmativa.

Además, la jueza estuvo un tiempo repasando el acuerdo entre las partes y detallando lo acordado. Detalló los pormenores del acuerdo y las posibles consecuencias y escenarios que puedan surgir.[20] Durante todo el proceso, las partes tuvieron la oportunidad de levantar dudas y pedir aclaraciones. Surge que al final del proceso, todos estuvieron de acuerdo con lo ahí acordado.

Por la falta de prueba y en miras de la política favorable y protectora que ha desarrollado nuestro Tribunal Supremo y que dispone el Código Civil de 1930 en torno a los contratos de transacción, no tenemos discreción salvo concluir que no se cometió el error.

Finalmente, la Sra. Castro Díaz cuestiona que el TPI haya permitido la renuncia del Lcdo. Oller Córdova y permitir la autorrepresentación del Sr. Quiñones, sin considerar lo dispuesto en la Regla 9.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 9.4. Antes de entrar al error, debemos aclarar que por no haber estado vigente la Regla 9.4 al momento de los hechos, nos debemos llevar por la normativa esbozada en *Lizarribar v. Martínez Gelpí, supra*.

En aquel caso, el Tribunal Supremo proveyó los criterios que deben ser considerados al momento de permitir la

---

[18] Apéndice de *Apelación*, Anejo 4.8, *supra*, pág. 109.
[19] *Íd.*
[20] *Íd.*, págs. 83-91 y 107-110.

autorrepresentación. Además, dispuso que los tribunales deben hacer un balance de intereses y propiciar el mayor y más justo acceso a la justicia. Luego de considerar el momento particular en que la representación legal renunció, concluimos que no se cometió el error.

Entre los criterios que debemos considerar está la etapa en la cual la representación legal renunció y la parte asumió su propia autorrepresentación. En el caso de autos, esto ocurrió al final de un procedimiento, luego de que las partes habían informado que habían llegado a un acuerdo. En la *Vista Urgente del 17 de noviembre de 2005*, el Lcdo. Oller Córdova informó que no estaba de acuerdo con el acuerdo de transacción puesto que no lo había podido discutir con su cliente, el Sr. Quiñones. No obstante, renunció su representación al final de la vista. Para todos propósitos prácticos, el acuerdo ya había sido discutido ante el Tribunal y en presencia de la jueza Araya de Martínez. De la transcripción de la *Vista Urgente,* surge que en la sala se llevó a cabo un proceso justo e imparcial, y no existen señalamientos o ocurrencias de derechos atropellados. Las partes se expresaron con un alto conocimiento de sus terrenos y los procesos a seguir con la Autoridad de Energía Eléctrica.

Consideramos que lo opuesto hubiese ocurrido si el TPI no hubiese permitido la autorrepresentación del Sr. Quiñones en esa etapa. Exigir que el Sr. Quiñones consiguiera representación legal cuando las partes ya habían acordado un contrato de transacción hubiese demorado ese proceso y frustrado la resolución de la controversia. Luego de hacer un balance de intereses en el contexto de las circunstancias del juicio, estimamos que el error no se cometió.

**IV**.

Por las razones discutidas, confirmamos la *Sentencia por Estipulación* del TPI.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones